

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0324-11

### THE STATE OF TEXAS

### v.

### DANNY LEE HOLLOWAY, II, Appellee

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### LAMAR COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. MEYERS, J., dissented.

### O P I N I O N

A jury found the appellee guilty of manslaughter,[1] made an affirmative finding that

he used a deadly weapon,[2] and assessed his punishment at twenty years in prison. The

---

[1] TEX. PENAL CODE § 19.04. Indicted for murder, the appellee requested and received jury instructions for the lesser-included offenses of manslaughter and criminally negligent homicide. TEX. PENAL CODE §§ 19.04, 19.05. *Holloway v. State*, 2003 WL 22491053, at *1 (Tex. App.—Texarkana 2003, pet. ref'd) [hereinafter *Holloway I*].

[2] *See* TEX. PENAL CODE § 1.07(17); TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2).

Texarkana Court of Appeals affirmed the conviction, and we refused the appellee's petition for discretionary review. Four years later, the appellee filed a motion for DNA testing of presumptive blood on the knife that was admitted at trial as the murder weapon. The convicting court granted his motion. When the subsequent DNA testing revealed that the biological material on the knife did not belong to the victim, the convicting court purported to grant the appellee a new trial. The State appealed, and the Sixth Court of Appeals reversed, holding that (1) the convicting court did not have jurisdiction under Chapter 64 of the Texas Code of Criminal Procedure to grant the appellee a new trial, and (2) the absence of the victim's DNA on the knife, by itself, could not support the convicting court's finding, under Article 64.04,[3] that the jury would not have convicted the appellee had the DNA evidence been available at trial.[4] We will affirm the judgment of the court of appeals.

## I. FACTS AND PROCEDURAL POSTURE

The appellee was convicted of manslaughter after multiple witnesses identified him as "wildly" wielding and "swinging" a knife during a fight that erupted outside a bar in Paris.[5] The victim, Ashley Lee, died of a stab wound inflicted by a single-edged implement such as the knife that police found afterwards in the appellee's truck. The witness testimony

---

[3] TEX. CODE CRIM. PROC. art. 64.04.

[4] *State v. Holloway*, 329 S.W.3d 247, 253-55 (Tex. App.—Texarkana 2010) [hereinafter *Holloway II*].

[5] *See Holloway I, supra*, at *1, *4; *Holloway II, supra*, at 254.

at trial conflicted regarding whether the appellee possessed such a knife during the melee.[6]

In a video-taped interview with a homicide detective following his arrest, the appellee denied that the knife found in his truck belonged to him and speculated that it had been planted in his car. The jury apparently chose to disbelieve him, however, and convicted him of manslaughter. His conviction was upheld on direct appeal.[7]

Four years after the court of appeals's decision, the appellee filed a motion for DNA testing of the knife found in his truck. At the time of trial, a presumptive test for blood had been conducted on the knife that yielded positive results, but no DNA testing was done. The convicting court granted the appellee's motion for testing and, following the receipt of the DNA results, held a hearing on February 25, 2010, pursuant to Article 64.04 of the Texas Code of Criminal Procedure.[8] The convicting court found that "there [was] a reasonable probability that [the appellee] would not have been convicted if the exculpatory DNA results

---

[6] Five witnesses for the State testified that they saw the appellee holding a knife during the fight. Three witnesses described the appellee's weapon as a "survival" knife, long, with ridges on one edge. In contrast, the only defense witness who testified to seeing the appellee with a knife identified it as a small "pocket knife." Five other defense witnesses testified that they never saw appellee, or any other person for that matter, with a knife. One defense witness testified to seeing another male, not the appellee, with a knife, similar to the one the State had introduced as the murder weapon, at some point earlier in the night.

[7] *Holloway I, supra*.

[8] TEX. CODE CRIM. PROC. art. 64.04. At the time of the hearing, this provision read: "After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted."

had been available for trial" and granted him a new trial.[9]  The State appealed, challenging both the order granting DNA testing in the first place and the order granting a new trial.[10]

The Sixth Court of Appeals did not reach the merits of the State's challenge to the order granting DNA testing, holding that the State did not timely file a notice of appeal to challenge that order.[11]  The court of appeals went on to hold, however, that the convicting court erred in granting the appellee a new trial.[12]  The court of appeals reasoned that, according to Rule 21.8(a) of the Texas Rules of Appellate Procedure,[13] the convicting court's jurisdiction to grant a new trial ended seventy-five days after it pronounced the appellee's sentence, and Chapter 64 does not independently provide any basis for granting a new trial.[14]  Lastly, applying a de novo standard of appellate review, the court of appeals held that the

---

[9] *Holloway II*, *supra*, at 249.  At the hearing on February 25th, the judge explained that the "total and complete chaos out there that night," the "conflicting evidence as to what the knife looked like, who had a knife or things like that," and the fact that the DNA results indicated that "the knife in the truck was not the murder weapon," all led to his favorable finding under Article 64.04 and his ruling to grant the defendant a new trial.

[10] *Id.*

[11] *Id*. at 250-51.  The court of appeals held that the State should have appealed within twenty days of the entry of that order, under TEX. CODE CRIM. PROC. art. 44.01(d).  The State does not challenge that ruling in this Court.

[12] *Id.* at 251.

[13] *See* TEX. R. APP. P. 21.8(a) ("*Time to Rule.*  The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court.").

[14] *Holloway II*, *supra*, at 251-52.

DNA test results were insufficient, when considered in the context of the other evidence presented at trial, to support the convicting court's finding of a reasonable probability that the appellee "would not have been convicted if the DNA evidence had been available during trial."[15]

We granted the appellee's petition for discretionary review to examine his contentions that the court of appeals erred to hold (1) that the convicting court lacked jurisdiction under Chapter 64 to grant the appellee a new trial, and (2) that the record did not support the convicting court's Article 64.04 favorable finding. We will affirm the judgment of the court of appeals.

## II. ANALYSIS

### A. Chapter 64: A Brief Overview

Chapter 64 of the Texas Code of Criminal Procedure outlines the procedure for a "convicted person" to make a motion in the original convicting court for DNA testing of biological evidence that was not previously tested or, due to new testing techniques, warrants re-testing by a state or other accredited laboratory.[16] The evidence must have been in the State's possession at the time of trial and must relate to the conviction the movant seeks to

---

[15] *Id.* at 253-55.

[16] TEX. CODE CRIM. PROC. art. 64.01(a-1)-(b), 64.03(c)-(d).

challenge.[17] To obtain testing, the movant has the burden of establishing, by a preponderance of the evidence, that he "would not have been convicted if exculpatory results had been obtained through DNA testing," and that he is not requesting the testing in order "to unreasonably delay the execution of sentence or administration of justice."[18] If the movant satisfies this burden of proof, the convicting court must additionally find that the evidence "still exists and is in a condition making DNA testing possible; [that it] has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and [that] identity was or is an issue in the case[,]" in order to grant the motion and order testing.[19] That the movant pled guilty or admitted guilt in any other manner leading up to his conviction does not preclude him from obtaining testing under Chapter 64.[20]

If the convicting court grants a motion for DNA testing, it is required to hold a hearing following the receipt of the test results.[21] At this hearing, the convicting court must make a finding as to "whether, had the results been available during the trial of the offense, it is

---

[17] *Id*. at 64.01(b).

[18] *Id*. at 64.03(a)(2).

[19] *Id*. at 64.03(a)(1), (c).

[20] *Id*. at 64.03(b).

[21] *Id*. at 64.04.

reasonably probable that the person would not have been convicted[,]" assuming that the jury (or the judge in a plea or trial to the court) had known of the exculpatory evidence at the time of its verdict.[22] Chapter 64 is notably silent, however, with respect to what remedial action, if any, the convicting court may take on the basis of its finding under Article 64.04. Either party may appeal an order entered pursuant to Chapter 64.[23]

## B. Jurisdiction

### 1. *Jurisdiction/Power/Authority*

In his first ground for review, the appellee contends that the court of appeals erred in holding that the convicting court lacked jurisdiction to grant him a new trial under Chapter 64 of the Texas Code of Criminal Procedure. The convicting court, the appellee argues, has both jurisdiction, as the convicting court under Chapter 64, and the "inherent power," by virtue of that jurisdiction, to correct its own rulings.[24] The State replies that the court of appeals correctly concluded that the convicting court lacked jurisdiction (whether "general," "special," or "limited") to grant the appellee a new trial under Chapter 64,[25] and that further, the convicting court did not have any "authority," implicit, inherent, or otherwise, to grant

---

[22] *Id.*

[23] *Id*. at 64.05; TEX. CODE CRIM. PROC. art. 44.01(a)(6).

[24] Appellee's Brief at 12 (citing *Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998) for its argument with regard to "inherent power").

[25] State's Brief at 10.

that specific relief.[26]

The court of appeals disposed of appellee's ground for review as a question of jurisdiction, but along the way it referred to a court's "power to act" under that grant of jurisdiction, and a court's "authority" arising from statutory law.[27] We have recognized that these various terms are not co-extensive or interchangeable.[28] "Jurisdiction" is typically used to refer to "the power of a court to hear a controversy and make decisions that are legally binding on the parties involved," also commonly referred to as "subject-matter jurisdiction."[29] Jurisdiction, then, is vested in the actual judicial body, the court.[30]

---

[26]

State's Brief at 6.

[27]

*Holloway II, supra*, at 251-52 (citing *State v. Patrick,* 86 S.W.3d 592 (Tex. Crim. App. 2002) (plurality opinion), for general principles of jurisdiction and *Awadelkariem*, *supra*, for the statutory timetables for that exercise of jurisdiction).

[28]

*See Davis v. State*, 956 S.W.2d 555, 557-58 (Tex. Crim. App. 1997) ("*Jurisdiction* is generally understood to denote judicial power or *authority*. However, as we shall explain, this term is often misapplied. . . . Jurisdiction, in its narrow sense, is something possessed by courts . . . . The *authority* and powers of a judge are incident to, and grow out of, the *jurisdiction* of the court itself. . . . Strictly speaking then, jurisdiction encompasses only the power of the tribunal over the subject matter and the person.") (emphasis added; internal quotation omitted); *Stine v. State*, 908 S.W.2d 429, 434 (Tex. Crim. App. 1995) (Meyers, J., concurring) ("Although the word 'jurisdiction' has a broad meaning in common parlance, and is often used as a synonym for 'authority' even in legal writing, it is traditionally considered in the law to identify a much more specific kind of power. A court's jurisdiction is comprised generally of its authority to render a particular kind of judgment . . . . Sometimes, . . . it is common to say that the court did not have authority to act as it did. But it is a mistake to say that the court was without jurisdiction in the matter."). *See also Simon v. Lavario*, 306 S.W.3d 318 n. 16 (Tex. Crim. App. 2009) ("Under some circumstances, we have observed, even a trial court with general jurisdiction may lack *authority* to take a certain action[.]"); *State v. Moore*, 225 S.W.3d 556, 568 n.47 (Tex. Crim. App. 2007) (quoting *Stine*).

[29]

*See State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009) ("The term 'jurisdiction' refers to the power of a court to hear a controversy and make decisions that are legally binding on

"Authority," on the other hand, may be used to refer to the power of an individual—the judge who presides over the court—to act under that grant of jurisdiction.[31] A lack of authority, therefore, is not always co-extensive with a lack of jurisdiction; a judge's lack of authority to act in a particular manner will not necessarily call into doubt the court's jurisdiction over the particular case. A trial court must derive its jurisdiction from either the Texas Constitution or our state legislative enactments.[32] After a trial court has lost plenary jurisdiction, it may nonetheless re-acquire "limited" jurisdiction to perform specific functions as authorized by statute or as instructed on remand by a higher court.[33]

For reasons expressed below, we conclude, as did the court of appeals, that the convicting court in the instant case lacked jurisdiction to grant a new trial either under: (1) the regulatory scheme that governs motions for new trial generally; (2) independently, under the provisions of Chapter 64 itself; or (3) somehow "implicitly," as a necessary corollary to the renewed, but limited, jurisdiction that Chapter 64 does confer.

---

the parties involved. . . . If there is no jurisdiction, the court has no power to act.").

[30] *See Davis, supra*, at 559.

[31] *Id*.

[32] *See*, *e.g.*, TEX. CONST. art. V, § 8 (specifying the "judicial power . . . vested in" the various state courts); TEX. CODE CRIM. PROC. art. 4.01-4.19.

[33] *Patrick, supra*, at 594 ("When a conviction has been affirmed on appeal and the mandate has issued, general jurisdiction is not restored in the trial court. The trial court has special or limited jurisdiction to ensure that a higher court's mandate is carried out and to perform other functions specified by statute[.]") (citing *Yarbrough v. State*, 703 S.W.2d 645, 649 (Tex. Crim. App. 1985)).

## *2. Motion for New Trial*

Rule 21 of the Texas Rules of Appellate Procedure provides the guidelines for filing a motion for new trial in a criminal case. Under Rule 21.4(a), a defendant may file a motion for new trial within thirty days from the day the judge pronounces the sentence in open court.[34] Rule 21.8(a) allocates seventy-five days following the imposition of the sentence in open court for the trial court to rule on the motion; if the motion is not timely ruled on within that period, the authority to grant the motion expires, and the motion is deemed denied by operation of law.[35] These deadlines, we have held, have jurisdictional significance. In *Drew v. State*, for example, we said that a motion for new trial is a purely statutory remedy, and that the movant must strictly adhere the terms of the statute in order to take advantage of this remedy.[36] The power to grant a motion for new trial under the statute was deemed to be an exercise of "particular authority" by a court of "limited jurisdiction."[37] When the statutory

---

[34] TEX. R. APP. P. 21.4(a).

[35] TEX. R. APP. P. 21.8.

[36] 743 S.W.2d 207, 223 (Tex. Crim. App. 1987).

[37] *Id.* We went on to explain:

> The jurisdiction of the court is a matter of statutory enactment and authority must there be found not only to hear the matter, but also to dispose of the same. In a case of jurisdiction limited over a certain thing [like granting a motion for new trial], the court has the power to exercise only such limited jurisdiction.
>
> When jurisdiction with respect to a particular matter is derived wholly from statute, the statutory provisions are *mandatory* and *exclusive* and must be complied

timetable is not followed, we said, "the trial court lacked jurisdiction" to thereafter rule on the merits of the motion for new trial.[38] We have similarly held on numerous occasions that a trial court lacks jurisdiction to grant a motion for new trial once the seventy-five days have run after which a motion for new trial, if not already expressly ruled upon, will be deemed overruled by operation of law.[39] In any event, in *State v. Moore*, we observed that, "[u]nder current law, the subject matter jurisdiction of the trial court over the case and the defendant extends, should the defendant timely file a sufficient notice of appeal, to the point in time at which the record is filed in the appellate court."[40] In the instant case, the convicting court's plenary jurisdiction to entertain a motion for new trial lapsed, *at the latest*, when the appellate record was filed in *Holloway I*. Whatever jurisdiction the convicting court in this case might thereafter have acquired to grant a new trial, it cannot derive from Rule 21 of the Rules of

---

with in all respects, and the court in exercising its particular authority is a court of *limited jurisdiction*.

*Id*. (emphasis and alteration in original) (internal quotations and citations omitted).

[38] *Id*.

[39] *See*, *e.g.*, *State v. Moore*, *supra*, at 566-67 ("[W]e have held that once a motion for new trial is overruled by operation of law, the trial court loses jurisdiction to rule upon it.") (internal quotation marks omitted); *State v. Garza*, 931 S.W.2d 560, 562 (Tex. Crim. App. 1996) (same); *State ex rel. Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987) (same). It was on the authority of *Moore* that the court of appeals in this case held that "[t]he trial court lost its plenary power to grant a new trial seventy-five days after convicting and sentencing" the appellee. *Holloway II*, *supra*, at 252 & n.6.

[40] *Moore*, *supra*, at 568.

Appellate Procedure, but must be found, if at all, elsewhere.

### 3. *Jurisdiction Under Chapter 64*

Does Chapter 64 itself confer that jurisdiction? "As for Chapter 64," the court of appeals observed below, "there is nothing in the statute authorizing the granting of a new trial."[41] Certainly on its face, Article 64.04 fails to explicitly authorize the convicting court to order a new trial. Indeed, the only substantive *order* that Chapter 64 contemplates is the one that grants or denies the movant's request for DNA testing.[42] Beyond that, Article 64.04 mandates that, should DNA testing be ordered, the convicting court must "hold a hearing and make a finding" with respect to the significance of the DNA test results.[43] It does *not* expressly go on to provide for any remedial action by the convicting court on the basis of that finding.[44] "No language in Article 64.04 could be interpreted to expand the trial judge's

---

[41]

*Holloway II*, *supra*, at 252.

[42]

*See Wolfe v. State,* 120 S.W.3d 368, 372 (Tex. Crim. App. 2003) ("Chapter 64 authorizes the convicting court to order DNA *testing*, and no more."). Of course, Chapter 64 also authorizes the convicting court to appoint counsel to represent an indigent movant who can demonstrate "reasonable grounds for a motion to be filed[.]" TEX. CODE CRIM. PROC. art. 64.01(c).

[43]

TEX. CODE CRIM. PROC. art. 64.04.

[44]

Article 17.48 also authorizes the convicting court, having made a finding favorable to the movant in a Chapter 64 proceeding, to "release *the convicted person* on bail under this chapter pending the conclusion of court proceedings or proceedings under Section 11, Article IV, Texas Constitution, and Article 48.01." TEX. CODE CRIM. PROC. art. 17.48 (emphasis added.) Of course, if the convicting court were to grant a new trial to a Chapter 64 movant, he would no longer be a "convicted person." We construe this provision to authorize the convicting court to release the movant on bail pending the State's appeal of a favorable finding under Article 64.04 and/or the movant's pursuit of post-conviction habeas corpus relief and/or executive clemency.

authority to rule beyond the 'favorable' or 'not favorable' findings."[45]  Thus, by its plain language, Article 64.04 authorizes no more than a finding.   This plain language expresses the evident legislative purpose behind Chapter 64, which was to provide a convicted person who is eligible under its terms with an avenue for obtaining post-conviction forensic DNA testing—and no more.[46]  And when the literal text of a statute is clear and unambiguous at the time of enactment, this Court will give effect to the plain language of the text.[47]

### 4.  Implicit Authority Under Chapter 64

It is true, of course, as the appellee asserts, that Chapter 64 re-confers at least some limited subject-matter jurisdiction in the convicting court.  The appellee cites the dissenting opinion in *Patrick* in support of the proposition that, once that limited subject-matter jurisdiction is re-conferred, a convicting court is at least "implicitly authorized to fulfill [that] jurisdictional purpose."[48]  The only reason that the plurality in *Patrick* refused to apply this

---

[45]

*Wolfe*, *supra*, at 372.

[46]

*See Ex parte Tuley,* 109 S.W.3d 388, 391 (Tex. Crim. App. 2002) (explaining the limited purpose of Chapter 64).

[47]

*Boykin v. Stat*e, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991). *See also Clinton v. State*, — S.W.3d. —, No. PD-0119-11, 2011 WL 6183608, at *3 (Tex. Crim. App. Dec. 14, 2011) (citing *Boykin* and reaffirming its principles); *Ex parte Blue*, 230 S.W.3d 151, 161 (Tex. Crim. App. 2007) (same); *Wolfe v. State, supra*, at 370 (same); *Ex parte Evans*, 964 S.W.2d 643, 646 (Tex. Crim. App. 1998) (same).

[48]

Appellee's Brief at 11.  In *Patrick*, the convicting court found that the movant failed to satisfy the Chapter 64 criteria for post-conviction DNA testing.  86 S.W.3d at 593.  It nevertheless entered an order permitting the movant to conduct such testing at his own expense. *Id*.  The plurality granted mandamus relief to the State, holding that the convicting court had lacked jurisdiction to

principle of implicit authority, the appellee asserts, was that the convicting court there, having determined that Patrick did *not* satisfy the statutory criteria for post-conviction DNA testing at the State's expense, had already relinquished its Chapter 64 jurisdiction by the time it purported to grant the defendant DNA testing at his own expense.[49] Here, by contrast, the appellee continues, the convicting court still retained its limited Chapter 64 jurisdiction at the time it ordered a new trial, and it had the implicit authority to take that action because it was in furtherance of the "jurisdictional purpose."[50]

Even accepting the appellee's premise, however, we reject his conclusion because he has plainly misidentified the jurisdictional purpose of Chapter 64. He claims that the jurisdictional purpose is to provide a mechanism whereby a convicting court can "correct its own rulings. The trial court denied the motion for a new trial after the original conviction and should be allowed under Chapter 64 subject matter jurisdiction to correct that ruling."[51] But it should be evident from our prior discussion of the plain language of Chapter 64 in

---

enter such an order. *Id*. at 595. It rejected the contention of the dissenters that the trial court had some "inherent" jurisdiction to order DNA testing beyond the limits of Chapter 64. *Id*. at 596. And, while the plurality did not reject outright the dissenters' position that a judicial act may be undertaken so long as it is "implicit to the jurisdictional purpose" that is explicitly conferred, it observed that such an act must at least "be in furtherance of some other action for which there is an explicit grant of jurisdiction." *Id*. at 595.

[49] *Id*.

[50] *Id*.

[51] *Id*.

general, and of Article 64.04 in particular, that the jurisdictional purpose of Chapter 64 does

not embrace any remedy for an applicant beyond a favorable finding of fact under Article

64.04. As the plurality in *Patrick* explained, any acts undertaken under the guise of "implicit

authority" may be taken only in furtherance of some other action for which there is an

explicit grant of jurisdiction.[52] The jurisdictional purpose of Chapter 64 is simply to provide

deserving applicants with a mechanism for post-conviction DNA testing and a favorable

finding on the record if justified by that testing; it does not include any other remedy or form

of relief in the convicting court. Permitting the convicting court to grant a new trial would

conflict with the plainly expressed jurisdictional purpose of Chapter 64. Indeed, if granting

a Chapter 64 movant DNA testing at his own expense exceeds the jurisdictional purpose of

the statute, as the plurality held in *Patrick*,[53] so much more so would granting him a new trial

based on favorable DNA test results.

Our strict adherence to the plain meaning of Chapter 64's explicit provisions to divine

its jurisdictional purpose does not lead to the absurd consequence of endowing the appellee

with a statutory right while depriving him of a statutory remedy. A Chapter 64 movant who

obtains a favorable finding under Article 64.04 may yet obtain appropriate relief predicated

---

[52]

*Patrick, supra,* at 595.

[53]

*Id*. at 596 ("[I]f the law is that the return, by statute, of jurisdiction to a trial court for a limited purpose invests the court with jurisdiction to act in matters other than those dictated by statute, then that law would not be limited to DNA testing. If the trial court has jurisdiction to order DNA testing outside the statute, then it would have jurisdiction to enter or lift a stay of execution.").

on that finding. He simply has to seek his remedy through procedural devices beyond the boundaries of Chapter 64 itself.

### 5. *Appellee's Remedy: Post-Conviction Writ of Habeas Corpus*

The proper and exclusive vehicle for obtaining judicial relief from a felony conviction on the basis of a favorable finding under Article 64.04 is a post-conviction application for writ of habeas corpus returnable to this Court under Article 11.07 or Article 11.071.[54] Chapter 64 was enacted in 2001,[55] several years after this Court first recognized, in *Ex parte Elizondo*, that, because the incarceration of an innocent person violates due process, a naked claim of actual innocence should be cognizable in post-conviction habeas corpus proceedings.[56] But, at least with respect to non-capital felony convictions such as the appellee's, Section 5 of Article 11.07 expressly provides that post-conviction habeas corpus is the exclusive remedy: "After conviction the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner."[57] To construe the "jurisdictional purpose" of Chapter 64 as the appellee urges us to do—that is, to include authorization for convicting courts to grant post-conviction relief

---

[54] TEX. CODE CRIM. PROC. arts. 11.07 & 11.071.

[55] *See* Acts 2001, 77th Leg., ch. 2, p. 2, § 2, eff. April 5, 2001.

[56] 947 S.W.2d 202 (Tex. Crim. App. 1996).

[57] TEX. CODE CRIM. PROC. art. 11.07, § 5.

from conviction in the form of a new trial—would bring it squarely in conflict with Article 11.07, Section 5. Not every favorable finding under Article 64.04 will necessarily lead to post-conviction habeas corpus relief.[58] In Article 11.07, the Legislature has vested jurisdiction exclusively in this Court to decide which felony applicants should obtain relief on the basis of a claim of actual innocence and which should not. This Court has always assiduously guarded its exclusive jurisdiction to grant post-conviction habeas corpus relief in felony cases.[59] Nothing we find in the provisions of Chapter 64 convinces us that the

---

[58] As we explained in *Routier v. State*, 273 S.W.3d 241 (Tex. Crim. App. 2008):

> [E]ven if the DNA testing to which the appellant is entitled under the statute does in fact provide evidence to corroborate her story . . . , she may not be entitled to relief by way of habeas corpus because she may well fall short of meeting the onerous standard for proving actual innocence.

*Id*. at 259 n.76 (citing *Elizondo*, *supra*, at 209, for the standard it set forth requiring an applicant to "show by clear and convincing evidence that no reasonable juror would have convicted him in light of new evidence of innocence"). If the *Elizondo* actual-innocence standard cannot be met by a habeas applicant following favorable DNA results pursuant to a Chapter 64 motion, however, he or she may yet have an additional avenue of relief in the form of a state clemency petition. *See id.*

[59] *See, e.g.*, *Olivo v. State*, 918 S.W.2d 519, 525 n.8 (Tex. Crim. App. 1996) ("[T]he exclusive post-conviction remedy in final felony convictions in Texas courts is through a writ of habeas corpus pursuant to TEX. CODE CRIM. PROC. art. 11.07."); *Keene v. Eighth Court of Appeals,* 910 S.W.2d 481, 483 (Tex. Crim. App. 1995) ("Jurisdiction to grant post conviction habeas corpus relief on a final felony conviction rests exclusively with this Court. . . . Any other proceeding shall be void and of no force . . . ."); *Ex parte Alexander*, 685 S.W.2d 57, 60 (Tex. Crim. App. 1985) ("It is well established that only the Court of Criminal Appeals possesses the authority to grant relief in a post-conviction habeas corpus proceeding where there is a final felony conviction. The trial court is without such authority."); *Ex parte Green*, 644 S.W.2d 9, 9 (Tex. Crim. App. 1983) (although this Court did not find fault with the trial court's proposed findings of fact and conclusions of law recommending that relief be granted, the trial court did not itself have authority under Article 11.07 to grant a new trial); *Ex parte Williams*, 561 S.W.2d 1, 2 (Tex. Crim. App. 1978) (concluding that the "trial court was without authority to grant the new trials in a post-conviction habeas corpus case, as only the Texas Court of Criminal Appeals has such authority over a final felony conviction," and

Legislature intended that we should divest ourselves of that otherwise exclusive jurisdiction whenever a favorable finding is made under Article 64.04.[60]

For all of these reasons, we hold that the court of appeals was correct to conclude that the convicting court lacked jurisdiction to order a new trial in this case.[61]

---

holding the orders to be "void and of no force and effect").

[60] We have similarly held that Article 11.07 itself, though it re-confers a limited subject-matter jurisdiction in the convicting court, does not thereby authorize the convicting court to cut corners, invading this Court's exclusive jurisdiction to grant habeas corpus relief by granting a new trial. In *Ex parte Ybarra*, 629 S.W.2d 943, 945-46 (Tex. Crim. App. 1982), the applicant alleged ineffective assistance of counsel, and the convicting court agreed. After entering recommended findings of fact and conclusions of law recommending that this Court grant habeas corpus relief, however, the trial court also purported to grant the applicant a new trial. *Id.* at 945. Addressing the question whether the trial court had the authority "to grant ten years [after the conviction] an out of time new trial," *id.*, we held that:

> the trial court had no power to grant the new trial as it did–though its concern about straightening out the matter without resorting to this Court is commendable. Still, it could not grant such relief in response to an application for writ of habeas corpus. Only the Court of Criminal Appeals has the authority to grant relief as a result of post conviction writ of habeas corpus.

*Id.* at 945-46. Here, as in *Ybarra*, the fact that a statute has re-conferred limited jurisdiction in the convicting court well after the court's plenary jurisdiction over the case has expired did not authorize it, pursuant to the "jurisdictional purpose" of that statute, to grant a new trial on its own initiative—however commendable that impulse might be.

[61] The State did not contest the convicting court's jurisdiction to order a new trial at the February 25th hearing, nor even on appeal. Nevertheless, jurisdiction is a systemic requirement which may be addressed on appeal even in the absence of an objection in the convicting court. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). Moreover, courts of appeals may review *fundamental* unassigned error for the first time on appeal even in the absence of a trial objection. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). In any event, the appellee does not complain in his petition for discretionary review that the court of appeals erred to reach the issue of the convicting court's jurisdiction *sua sponte*.

## C. Review of the Convicting Court's Article 64.04 Finding

In his second ground for review, the appellee contends that the court of appeals erred in holding that the evidence did not support the convicting court's finding that it was reasonably probable that the appellee would not have been convicted if the DNA evidence had been available during trial. Upon closer examination, however, we hold that the court of appeals erred to address the State's challenge to the trial court's Article 64.04 finding. Because Article 64.04 does not itself provide the appellee with any remedy, the court of appeals's opinion with respect to the sufficiency of the evidence to support the trial court's favorable Article 64.04 finding was advisory in nature. Resolution of such a question should await such time as an applicant may seek post-conviction habeas corpus relief.

## III. CONCLUSION

We hold that the convicting court lacked jurisdiction to order a new trial on the basis of its Article 64.04 finding and that the court of appeals should not have addressed the question of the sufficiency of the evidence to support that finding. The judgment of the court of appeals is affirmed.

DELIVERED:     March 7, 2012
PUBLISH