PD-1511-15

PD-1511-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/23/2015 12:00:00 AM
Accepted 11/23/2015 11:15:40 AM
ABEL ACOSTA
CLERK

**Oral Argument Requested**

NO. _____

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

---

**BRANDY MECHELLE HARRIS**,
Appellant

**v.**

**THE STATE OF TEXAS**,
Appellee

---

On Petition for Discretionary Review from
The Opinion in Cause No. 05-14-01228-CR
In the Court of Appeals, Fifth District of Texas

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**John D. Nation**
SBN: 14819700
*Attorney for Appellant*

4925 Greenville, Suite 200
Dallas, Texas 75206
214-800-5160
214-800-5161 (fax)
nationlawfirm@gmail.com

FILED IN
COURT OF CRIMINAL APPEALS

November 23, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**:

Brandy Mechelle Harris

**Trial and Appellate Counsel**:

Troy Burleson, Trial
2591 Dallas Pkwy, Suite 207, Frisco, Texas 75034
John D. Nation, Appeal, 4925 Greenville, Suite 200, Dallas, Texas 75206

**Appellee**:

The State of Texas

**Trial Counsel**:

Austin Ortiz, Assistant District Attorney
Rebecca Ott, Assistant District Attorney
Frank Crowley Courts Bldg.
133 N. Riverfront
Dallas, Texas 75207

**Trial Court**:

Criminal District Court No. 6 of Dallas County:

Hon. Jeannine Howard, Presiding
Frank Crowley Courts Building
133 N. Riverfront
Dallas, Texas 75207

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**.................................................... **2**

**LIST OF AUTHORITIES**.................................................................. **4**

**STATEMENT OF THE CASE**.............................................................. **5**

**STATEMENT REGARDING ORAL ARGUMENT** ................................ **6**

**FACT STATEMENT**......................................................................... **6**

**STATEMENT OF PROCEDURAL HISTORY** ........................................ **9**

**ARGUMENT** ...................................................................................... **9**

**Ground for Review No. One:** ........................................................ **9**

*The court of appeals erred in holding that it could not consider evidence adduced at a hearing on a new-trial motion that occurred outside the 75-day limit but continued at the State's behest.* ................................................. **9**

**Ground for Review No. Two:**........................................................ **13**

*The court of appeals erred in holding the evidence was sufficient to sustain conviction.*........................................................................................ **13**

**CERTIFICATE OF WORD COUNT**.......................................... **17**

**CERTIFICATE OF SERVICE** ..................................................... **17**

## LIST OF AUTHORITIES

**Cases**

*Harris v. State*, No. 05-14-01228-CR .................................................. 9, 10, 13

*Jackson v. Virginia*, 443 U.S. 307 (1979)....................................................... 13

*Moore v. State*, 225 S.W.3d 556, 568 (Tex. Crim. App. 2007)...................... 10

*Parmer v. State*, 36 S.W.3d 661, 667 (Tex. App.—Austin 2000, pet. ref'd), 10

*State v. Holloway*, 360 S.W.3d 480, 486 (Tex. Crim. App. 2012), ............... 10

**Statutes**

Tex. Penal Code § 31.03 (a), (b) (1) and (e) ..................................................... 5

**Rules**

Rule 21.8 (a)............................................................................................. 11

Tex. R. App. Pro. 21 ................................................................................. 11

Tex. R. App. Pro. 66.3 (c).......................................................................... 9

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW Appellant Brandy Meshelle Harris and submits this brief on appeal from her conviction in cause no. F13-00510-X.

## STATEMENT OF THE CASE

Appellant was charged with theft of property of the value of at least $20,000 but less than $100,000, a third-degree felony. *See* Tex. Penal Code § 31.03 (a), (b) (1) and (e). (R.II 10). Trial was to the court on Appellant's not-guilty plea. Following the guilt-innocence evidence, the trial court found Appellant guilty of the lesser-included offense of theft of property of the value of at least $1,500 but less than $20,000, a state jail felony. (R.II 132). A separate sentencing hearing was held, at which the court sentenced Appellant to a term of two years imprisonment in a state jail, probated for five years, a $750 fine and $7,000 restitution. (R.III 5). Appellant later filed a motion for new trial which was denied following a hearing. (R. Supp. 41).

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a serious issue involving whether a court may conduct a new trial motion hearing if the State requests a continuance which results in the hearing being conducted outside the 75-day time limit. Appellant believes oral argument will assist the Court in resolving the issue.

## FACT STATEMENT

Stephanie Elliott, the complainant, knew Appellant from her work at BCBG.[1] Complainant employed Appellant outside the store to assist her with her wardrobe. (R.II 18). According to complainant, when Appellant was at her house, she had access to everything. (R.II 19).[2] The complainant kept her jewelry in a closet with the precious stones locked in a jewelry box. (R.II 19-20).

On February 22, 2012, which would turn out to be the last day Appellant was needed to complete the wardrobe work (and the last day she would ever be at complainant's residence) the complainant asserted that Appellant had called earlier and asked to speak with her. (R.II 20).

---

[1] The record does not disclose the nature of the business, but an internet search reveals that BCBG is a woman's fashion enterprise with stores in the Dallas area.

[2] At the time of the alleged offense, the complainant lived on Bandera Street but later moved to another address.

The complainant had a household rule that visitors were not allowed to wear street shoes. On that day, the terrazzo floors were cold, so Appellant asked to borrow a pair of socks. (R.II 21). While complainant finished some paperwork in a different room, Appellant went to get the socks. Because complainant felt it was taking too long for Appellant to find the socks, she went to the closet area of the bedroom. There she found Appellant coming out of the closet area, socks in hand and not on her feet. (All references are to R.II 21).

Appellant and complainant sat down and Appellant asked to borrow money and for some additional business referrals. Complainant did not agree to extend a loan. At the time, according to the complainant, Appellant was wearing a costume jewelry bracelet that complainant had noticed before because it resembled her far-more-valuable tennis bracelet. Appellant's bracelet was elasticized and not hard metal. (R.II 22-23).

It seemed to complainant that Appellant was in a hurry to leave, but complainant was on a time schedule as well. They hugged and Appellant left. (R.II 24).

On March 30, 2012, complainant was packing and moving to her new residence. As she was packing her closet, she noticed that the jewelry box lock had been pried. When she opened the box, she saw what she believed was Appellant's costume bracelet, but her tennis bracelet was gone. (R.II 24). She

claimed not to have seen the bracelet recently—she had gone back to culinary school recently and could not wear it during the day—but her tennis bracelet was normally a "daily wear" for her. (R.II 24-25).

That same day she received an email from Appellant, asking for a loan. She did not respond immediately, but later told Appellant in conversation that she did not give loans. (R.II 30). She identified State's Exhibit 2 as the costume piece she found in the box instead of her tennis bracelet. (R.II 33).

Complainant testified that the bracelet had cost her $20,000 to purchase. Later she added heirloom diamonds near the clasp. (R.II 35).

On April 7, 2012, she went to BCBG and confronted Appellant about the missing bracelet. Appellant protested her innocence. Complainant asked her to look for the piece and Appellant agreed. She called back later and said she did not have the bracelet. According to complainant, Appellant never admitted taking the bracelet. (R.II 37-38).

During her direct and recross examination, the complainant claimed that she had a video of Appellant poking around in her closet. Complainant professed to have lost the digital storage medium and did not have the video at trial. (R.II 62-63). Detective Adrian Ballin did not remember complainant telling him there was a video and the parties stipulated that the police report contained no mention of complainant having a video. (R.II 97; 75).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals' opinion in *Harris v. State*, No. 05-14-01228-CR was rendered October 22, 2015. No motion for rehearing was filed. The petition is due November 23, 2015 and is filed on or before that date.

## ARGUMENT

Ground for Review No. One:

*The court of appeals erred in holding that it could not consider evidence adduced at a hearing on a new-trial motion that occurred outside the 75-day limit but continued at the State's behest.*

Reasons for Review:

Tex. R. App. Pro. 66.3 (c) : the court of appeals has decided an important issue of law which is in conflict with this Court's opinions in *State v. Holloway*, 360 S.W.3d 480 (Tex. Crim. App. 2012) and *Moore v. State*, 225 S.W.3d 556 (Tex. Crim. App. 2007).

Arguments and Authorities:

As the court's opinion reflects, Appellant timely filed her new trial motion thirty days following sentencing. She requested a hearing and the hearing date was set and reset several times. Sixty-nine days after sentencing, **the State** sought a final continuance, which Appellant did not oppose, so that all witnesses could attend the hearing. The hearing itself, per the State's

continuance motion, occurred seventy-nine days after judgment. Because the hearing occurred more than seventy-five days after judgment, according to the court, it could not consider any evidence adduced at the hearing, citing *Parmer v. State*, 36 S.W.3d 661, 667 (Tex. App.—Austin 2000, pet. ref'd), and thus Appellant's ineffectiveness claim failed. *Slip op*. at 6-7. The court pretended this was all that need be said. But the court was wrong on two counts: because Appellant filed a timely notice of appeal before filing the new trial motion, the trial court retained plenary power to consider the motion even after the seventy-five day limit and even so, the State invited the error in going beyond the time limit.

In *Moore v. State*, 225 S.W.3d 556, 568 (Tex. Crim. App. 2007), this Court held that under current law, the subject-matter jurisdiction of the trial court over the case and the defendant extends, should the defendant timely file a sufficient notice of appeal, to the point in time at which the record is filed in the appellate court. In *State v. Holloway*, 360 S.W.3d 480, 486 (Tex. Crim. App. 2012), we find this principle applied further. Holloway filed a motion for DNA testing some four years after this Court denied his petition for discretionary review. The trial court granted the motion and when the results proved favorable to the defendant, purported to grant him a new trial. The State contended that the trial court could not grant a new trial at this remove.

After discussing the dictates of Tex. R. App. Pro. 21, including Rule 21.8 (a), this Court then turned to Moore: "[i]n the instant case, the convicting court's *plenary jurisdiction* to entertain a motion for new trial lapsed, at the latest, when the appellate record was filed in Holloway I." 360 S.W.3d 486. (emphasis added). Because any motion for new trial came after filing of the appellate record on direct appeal, the court lacked jurisdiction to grant a new trial. *Id*.

In the present case, however, Appellant filed a motion for new trial fourteen days after judgment and before she filed her motion for new trial. The motion for new trial was heard before the appellate record was filed.[3] Under *Moore* and *Holloway*, the trial court possessed the plenary power to hear and consider the motion, and if the trial court could consider the motion, the court of appeals could consider the evidence therein adduced in deciding Appellant's ineffective assistance point of error. The court of appeals erred in holding to the contrary.

Even absent *Moore* and *Holloway*, the court's ruling is wrong. *Parmer v. State*, 38 S.W.3d 661, 667 (Tex. App.—Austin 2000, pet. ref'd) is not in

---

[3] The court concedes that Appellant's new trial motion was timely and notes the motion was heard November 21, 2014. Appellant filed her notice of appeal on September 17, 2014, before the motion was heard. The complete record on appeal was not filed until February 4, 2015 with the filing of the reporter's record. *See* www. Search.txcourts.gov/Case.aspx?cn=05-14-01228-CR&coa=coa05.

point. Parmer is not a case where the State caused the hearing to be held outside the limit. And if the court believes that is does not matter which party requested the continuance beyond the limit, it should explicitly so state, which it did not even attempt to do.

Following the lead of *Moore*, the court should have held that the State's actions in this case constituted a waiver of any objection to the timing of the hearing. The State requested the continuance. The State appeared at the hearing and fully participated therein, never objecting or even notifying the trial court that it considered the hearing jurisdictionally inappropriate. Only for the first time on appeal did the State ask for a judicial "King's X" and urge the court of appeals to ignore the evidence from the hearing. This is hardly fair or just. If, as in *Moore*, the State's failure to object to a later-filed amended motion for new trial constitutes waiver, then there is no principled reason why the result should be different when the State requests a continuance of the motion hearing beyond the time limit and participates in the hearing while failing to object.

The court's opinion is erroneous on two separate grounds and discretionary review is appropriate.

Ground for Review No. Two:

*The court of appeals erred in holding the evidence was sufficient to sustain conviction.*

Reasons for Review:

The court of appeals, though stating the correct standard of sufficiency review, incorrectly applied the standard and reached an erroneous result.

Argument and Authorities:

At pages 13-19 of her brief, Appellant cited several problems with the State's evidence that rendered the evidence insufficient, even under the deferential standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). The court of appeals essentially held that these were conflicts in the evidence that the trial court was authorized to resolve:

> [t]he evidence showed appellant was one of only two people, other than Elliott, who had access to Elliott's closet. On her last day at Elliott's house, appellant was wearing the elastic band costume jewelry bracelet that looked "very similar" to Elliott's expensive diamond and platinum bracelet. On that day, appellant took an excessive amount of time in Elliott's closet retrieving a pair of socks. She also told Elliott she was in debt and needed money. Weeks later, Elliott noticed for the first time that the lock on her jewelry box was broken and her diamond and platinum bracelet was missing; in its place was the costume bracelet worn by appellant. Considering the evidence, we conclude the trial court could have rationally believed beyond a reasonable doubt that appellant stole Elliott's bracelet and left her own elastic bracelet in its place.

*Slip op*. at 6.

The court of appeals wrongly characterized the evidence. The other person with access to the closet was the complainant's housekeeper, who had much more frequent access to the closet than did Appellant. Moreover, the evidence showed that the complainant initially accused the housekeeper of the theft, which was significant, given the complainant's later certainty that Appellant had stolen the bracelet.

It was the complainant's story that on February 22, 2012, Appellant, under the guise of obtaining socks, broke into the jewelry box, took out the tennis bracelet, replaced it with her costume bracelet, and then made off with the tennis bracelet. The complainant asserted she did not notice the jewelry box had been compromised until March 30, 2012. (R.II 51). From February 22nd to March 30th, she was wearing jewelry, but not when she attended cooking classes. (R.II 50). The tennis bracelet, for complainant, was a "daily wear." (R.II 24). The complainant did not notice the tennis bracelet missing until March 30th. (R.II 30).

Closer examination of this testimony, and the inferences therefrom, completely destroy the rationality of the guilt finding. The complainant wore jewelry, daily or otherwise, for over a month between February 22nd and March 30th, but never noticed the lock had been compromised.

Even worse, if the tennis bracelet was a "daily wear" for the complainant, we can only conclude, under the complainant's account, that she never noticed the tennis bracelet was missing. Yet worse, we must also conclude that, since Appellant had switched the bracelets in the complainant's story, that the complainant, during the applicable time period, unknowingly wore the costume bracelet, even though she knew the difference.[4]

The costume bracelet itself, State's Exhibit 2, hardly provides corroboration for the assertion that Appellant stole the more valuable bracelet. No effort was made to connect the costume bracelet to Appellant beyond the complainant's assertion they were the same. For example, no fingerprint evidence was offered. Because this was a costume jewelry piece, one imagines it was not "one of a kind" and therefore was not unique. Nor were there apparently any markings that would have connected the piece with Appellant.

As for Appellant's request for a loan, and additional business referrals, Appellant did not tell the complainant she was desperate for money and this factor hardly points to her as the thief.

---

[4] The State elicited from complainant that while she was wearing jewelry during this period, she might not have noticed the missing bracelet, because she had to pull out the compartment completely where the bracelet was kept. (R.II 66-67). This does not solve the State's sufficiency problem: this testimony asks us to believe that the complainant, for some unknown reason, stopped daily wearing the tennis bracelet during the applicable time period, even though, since March 30th had not yet arrived, she had no reason to suspect that the bracelet was missing.

The factors mentioned above are not conflicts in the evidence, they are *defects* in the evidence. In resolving the sufficiency issue, the court failed to perform the detailed review of the evidence that Appellant did in her brief. The court's resolution of the sufficiency issue is erroneous and discretionary review is appropriate.

WHEREFORE, Appellant prays that her petition for discretionary review be granted.

Respectfully submitted,

/s/ John D. Nation
John D. Nation
State Bar No. 14819700
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
214-800-5160
214-800-5161 (facsimile)
nationlawfirm@gmail.com

Attorney for Appellant

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief contains 2,981 words in Microsoft Word 2013, Times New Roman, 14 point font.

/s/ John D. Nation
John D. Nation

## CERTIFICATE OF SERVICE

I hereby certify that I have serve a true copy of this petition on Hon. Susan Hawk, District Attorney, Dallas County, Frank Crowley Courts Bldg., 133 N. Riverfront, Dallas, Texas 75207, by the electronic filing system on this 23rd day of November 2015.

/s/ John D. Nation
John D. Nation



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01228-CR

**BRANDY MECHELLE HARRIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1300510-X**

## MEMORANDUM OPINION

Before Justices Francis, Lang, and Brown
Opinion by Justice Francis

Following a bench trial, Brandy Mechelle Harris was convicted of theft of property valued at $1500 or more but less than $20,000. The trial court assessed punishment at two years in state jail, suspended sentence, and placed appellant on five years community supervision. In two issues, appellant challenges the sufficiency of the evidence to support her conviction and the adequacy of counsel's representation. In a cross-issue, the State requests we modify the judgment to reflect that appellant pleaded not guilty to the offense. We overrule appellant's issues and sustain the State's cross-issue. We modify the judgment as requested and affirm as modified.

Stephanie Elliott testified she met appellant through appellant's work at Tootsie's and BCBG, two apparel stores. Elliott was one of appellant's customers. During one of her visits to

BCBG, Elliott hired appellant to prepare a wardrobe book for her. The project entailed appellant going through Elliott's wardrobe and putting together different articles of Elliott's clothing, along with shoes, jewelry, and accessories, and photographing the ensemble.

Appellant went to Elliott's condominium four or five times to work on the book. Elliott lived in a controlled-access building, meaning that each time appellant came to her residence, Elliott had to go down a private elevator and exit to a secured door to let appellant in or out. Elliott said she had to use a key fob for entry and exit, and she had the only key fob.

While working on the book, appellant had "complete access" to Elliott's wardrobe, all her jewelry, "everything." Elliott said she kept her "precious stones," including a diamond and platinum tennis bracelet, in a locked jewelry box in her closet. She kept her "simpler pieces" in a drawer with jewelry trays.

During this time, Elliott noticed appellant wearing a costume jewelry bracelet that, "at first glance," looked real and "very similar" to Elliott's diamond and platinum tennis bracelet. Elliott commented on the bracelet, and appellant said it was a "little cheapy" and showed her that it had an elastic band. At some point, appellant commented on "how beautiful" Elliott's bracelet was.

Appellant's last day at Elliott's home was February 22, 2012, and she was wearing the elastic band bracelet. Elliott had a rule that guests could not wear shoes in her home. On that day, appellant told Elliott her feet were cold and asked to borrow a pair of socks. Elliott let appellant go to her closet to get a pair, but when it took longer than Elliott thought it should, she went to look for appellant. As Elliott went into the bedroom, appellant was coming out of the closet with the socks in her hands.

The two went to Elliott's sitting room, and appellant told Elliott she was in debt and needed to borrow money. She also said she needed more work and asked if Elliott could refer

–2–

her to some people. Elliott said appellant seemed to be "in a little bit of a hurry to leave," and she hugged her and told her she would see if she could find her other referral work.

On March 30, Elliott was in the process of packing her belongings so that she could move and noticed the lock on her jewelry box was broken. Although Elliott had been accessing the box in the previous weeks, she did not notice the lock had been tampered with until a small screw fell out. When she went through the box's contents, she discovered that her diamond and platinum bracelet was missing and appellant's elastic bracelet was in its place. Although Elliott generally wore the bracelet daily, she had not worn it in the time since appellant had last been at her house because she was in culinary school and was not allowed to wear jewelry.

Upon discovering the bracelet missing, Elliott said she began "rolodexing" how many people had been in her residence and had access to her closet. She determined it was only she, her cleaning lady, and appellant. Elliott said her cleaning lady had been with her for three years, and nothing had ever been stolen during that time. She also knew the elastic bracelet left in her jewelry box belonged to appellant, yet she said she quizzed her cleaning lady until she was in tears because she believed appellant was a "trusted friend."

On the same day that she discovered her bracelet missing, Elliott received an email from appellant saying she was $26,000 in debt and asking to borrow $13,000. Elliott told appellant she did not "give loans." A week later, Elliott went to BCBG and confronted appellant about the bracelet. The two went outside to talk, and appellant denied taking the bracelet. Elliott offered "several different scenarios" in which appellant could have innocently or accidentally taken the bracelet, and appellant said, "No, absolutely not." During their conversation, Elliott said appellant became "very theatrical" and loud. Ultimately, appellant agreed she would look for the bracelet and call Elliott back. Within a couple of days, appellant called Elliott and said she could not find the bracelet and suggested the cleaning lady stole it. Later that day, Elliott received a

–3–

text from appellant saying she had gotten a $7000 bonus from BCBG. According to Elliott, BCBG told her it does not give bonuses to employees.

On April 10, Elliott reported the theft to the police. By that time, she had moved from her condominium to another address. At trial, she testified she had a video of appellant in her closet on that last day going through the area of her jewelry box, but said she had lost it during her move. She also said she told the police about the video, but the police report did not mention a video.

Finally, other evidence was presented regarding the value of the bracelet. Elliott testified the bracelet was custom made for about $20,000, and she later added five diamonds to the clasp. Other evidence showed that, at the time of the theft, Elliott told the police its value was $12,000. Elliott's jeweler, who had been appraising jewelry for more than thirty years, testified the bracelet's value was "somewhat in excess of $30,000" and that it would cost approximately $40,000 to purchase it retail.

The indictment alleged the property taken was a bracelet with a value of at least $20,000 but less than $100,000. After hearing the evidence, the trial court found the bracelet's value was more than $1500 but less than $20,000 and found appellant guilty of state jail felony theft.

In her first issue, appellant contends the evidence is insufficient to support her conviction. In reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Therefore, when analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the

combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* For purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are treated equally. *Id.*

A person commits theft if she unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

Here, appellant argues the evidence is insufficient because Elliott's testimony was "so riddled with contradictions, mistakes . . . and variances with normal human experience as to render the finding of guilt irrational." In particular, she argues (1) Elliott did not notice until March 30 that the lock on the jewelry box had been compromised; (2) although she claimed at trial to have had video evidence at one time, the police report did not mention any such evidence nor did the investigating officer recall Elliott telling him about a video; and (3) Elliott testified she paid $20,000 for the bracelet but told the police the bracelet was worth $12,000. She points to other "problems" with the evidence. She contends no fingerprint evidence connects the elastic bracelet to appellant. Also, she questions why Elliott would quiz her housekeeper to tears if she found the costume bracelet in her jewelry box, suggesting the costume bracelet was found elsewhere in the residence and put in the jewelry box by the housekeeper after she stole the bracelet. Finally, she argues Elliott's behavior was "suspect" because she did not immediately confront appellant even when appellant asked for a loan

Although appellant argues the above "problems" render the evidence legally insufficient, we cannot agree. First, we note, as did Elliott at trial, the theft occurred two and a half years earlier and Elliott was testifying based on her memory and recall of the event. While there may have been some inconsistencies on particular sequences of events or the value of the bracelet, the trial court was in the best position to resolve those inconsistencies and to judge Elliott's

credibility. With that in mind, the evidence showed appellant was one of only two people, other than Elliott, who had access to Elliott's closet. On her last day at Elliott's house, appellant was wearing the elastic band costume jewelry bracelet that looked "very similar" to Elliott's expensive diamond and platinum bracelet. On that day, appellant took an excessive amount of time in Elliott's closet retrieving a pair of socks. She also told Elliott she was in debt and needed money. Weeks later, Elliott noticed for the first time that the lock on her jewelry box was broken and her diamond and platinum bracelet was missing; in its place was the costume bracelet worn by appellant. Considering the evidence, we conclude the trial court could have rationally believed beyond a reasonable doubt that appellant stole Elliott's bracelet and left her own elastic bracelet in its place. Further, the evidence was sufficient to show the value of the bracelet was $1500 or more but less than $20,000. We overrule the first issue.

In her second issue, appellant argues she received ineffective assistance of counsel because counsel failed to adduce evidence she believed was important to her case and advised her not to testify. To support her complaints, she relies on evidence adduced at a hearing held after her motion for new trial was overruled by operation of law.

A motion for new trial must be filed no more than thirty days after the date the trial court imposes the sentence. TEX. R. APP. P. 21.4(a). The trial court must rule on the motion within seventy-five days after imposing sentence; otherwise, the motion is deemed overruled by operation of law. TEX. R. APP. P. 21.8(a), (c). Once a motion for new trial is overruled by operation of law, the trial court is without jurisdiction to rule on the motion. *State v. Garza*, 931 S.W.2d 560, 562 (Tex. Crim. App. 1996). A hearing held after the trial court has lost jurisdiction to rule on the motion is not authorized and therefore will not be considered on appeal. *Parmer v. State*, 38 S.W.3d 661, 667 (Tex. App.—Austin 2000, pet. ref'd).

–6–

In this case, the trial court imposed sentence on September 3, 2014. Appellant timely filed a motion for new trial thirty days later, or October 3, 2014. A hearing on the motion was set and reset several times. At a hearing on November 11, which was sixty-nine days after imposition of sentence, the State sought a final continuance so that all parties could be present, and appellant's counsel specifically stated he did not object. The trial court granted the continuance and did not conduct the hearing until November 21, which was four days after the motion was overruled by operation of law. Consequently, this Court cannot consider any evidence presented at the hearing.

To successfully assert an ineffective assistance of counsel challenge on direct appeal, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance of counsel claim must be "firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Here, appellant's motion for new trial raised three ineffective assistance of counsel grounds: (1) trial counsel met with her only briefly and with insufficient consultation time to prepare a defense; (2) trial counsel would not permit her to testify even though she wished to testify and had relevant and material evidence to the guilt-innocence determination; and (3) trial counsel failed to impeach Elliott with material information that contradicted her trial testimony.

Appellant asserted the motion's resolution depended on facts not determinable from the record and an evidentiary hearing was required.

Because we cannot consider the evidence adduced at the new trial hearing, there is nothing in the record to support appellant's particular assertions of ineffective assistance. Under these circumstances, we therefore conclude she has not met her burden of overcoming the strong presumption of reasonable assistance required by *Strickland*. *See Rylander*, 101 S.W.3d at 110. We overrule the second issue.

In a cross-issue, the State asks us to modify the trial court's judgment to reflect that appellant pleaded not guilty to the offense. The record shows appellant pleaded not guilty to the offense, but the judgment shows she pleaded guilty. This Court has the authority to correct a judgment to make the record below "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to reflect a plea of not guilty to the offense.

We affirm the judgment as modified.

Do Not Publish
TEX. R. APP. P. 47.2(b)
141228F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDY MECHELLE HARRIS,
Appellant

No. 05-14-01228-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-1300510-X.
Opinion delivered by Justice Francis;
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect a Plea to Offense of Not Guilty.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered October 22, 2015.