

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00033-CR

_____

THE STATE OF TEXAS, Appellant

V.

DANNY LEE HOLLOWAY, II, Appellee

_____

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 18662

_____

Before Carter, Moseley, and Miller,* JJ.
Opinion by Justice Carter

_____

*District Judge John F. Miller, Jr., of the 102nd Judicial District Court, was appointed by order of Chief Justice
Wallace Jefferson of the Texas Supreme Court, pursuant to TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005), to sit

with this Court and hear this appeal in place of Chief Justice Josh R. Morriss, III, who recused himself from the proceeding.

OPINION

## I.     Introduction

DNA testing done seven years after the conviction of Danny Lee Holloway, II, for manslaughter showed the victim's blood was not on the knife allegedly used as the deadly weapon. As a result, the trial court concluded Holloway probably would not have been convicted had that evidence been available at trial, and granted Holloway a new trial.   We find that conclusion is not supported by evidence and, even if it was, the trial court was not authorized to grant a new trial.

## II.     Facts and Procedural History

Holloway was convicted in 2002 for manslaughter by using a knife as a deadly weapon. He later petitioned for DNA testing of the knife, and the trial court granted Holloway's motion on April 29, 2009.   No appeal was taken from that order.   On February 25, 2010, the trial court conducted a hearing pursuant to Article 64.04 of the Texas Code of Criminal Procedure, granted Holloway a new trial,[1] and set a $75,000.00 bond.[2]   Later, the trial court entered findings of fact and conclusions of law, one of which found that there is a reasonable probability that Holloway would not have been convicted if the exculpatory DNA results had been available for trial.   The State appeals the orders, contending that the trial court should not have authorized DNA testing because Holloway did not prove that identity was an issue and should not have granted a new trial

---

[1]After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted.   TEX. CODE CRIM. PROC. ANN. art. 64.04 (Vernon 2006).

[2]A bond in that amount is contained in the record, and we assume Holloway was released on that bond.

3

because the court erred in its conclusions of law. The initial question is whether the State has filed a timely appeal to the order granting DNA testing.

**III.     May the State Now Appeal the April 29, 2009, Order Granting DNA Testing?**

Holloway argues the State did not file its appeal concerning the order for testing in a timely manner.

**A.     Appellate Timetable**

The State's right to appeal in criminal cases is limited by statute.     *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3), (6) (Vernon Supp. 2010). Article 64.05, describing the procedure for appeals in Chapter 64 proceedings, directs that all appeals follow the usual procedures designated for appeals to the courts of appeals, except death penalty appeals are to the Texas Court of Criminal Appeals. The State is required to appeal within twenty days of the order, ruling, or sentence about which it is complaining.     TEX. CODE CRIM. PROC. ANN. art. 44.01(d) (Vernon Supp. 2010).[3] The trial court's order allowing DNA testing was entered April 29, 2009. The State failed to appeal within twenty days of the April 29, 2009, order. But the State argues this appeal is effective as to the April 29, 2009, order, basing its contention primarily on *In re Morton*, No. 03-08-00585-CR, 2010 Tex. App. LEXIS 93 (Tex. App.—Austin Jan. 8, 2010, no pet.). We find *Morton* to be distinguishable.

---

[3]Chapter 64 also allows for appeals of orders entered under that chapter:     "An appeal under this chapter is to a court of appeals in the same manner as an appeal of any other criminal matter, . . . ."   TEX. CODE CRIM. PROC. ANN. art. 64.05 (Vernon 2006).

4

**B.** *In re Morton*

Post-conviction, Morton asked for DNA testing of several items, including swabs from the victim, a bloody bandana found about 100 yards from the murder scene (Morton was convicted of killing his wife in their bedroom), fingerprints at the scene, and items from another, unrelated murder victim, killed in the same neighborhood six years before Morton's wife was murdered. *Id.* at **3–4. In 2006, the trial court granted Morton's request for testing on biological material from the victim and denied his request for testing on the bandana. For almost two years, the trial court failed to rule on the testing of biological material from the prior unrelated matter; apparently under compulsion of a mandamus ruling, the trial court in 2008 denied testing of the unrelated case material.[4] Morton appealed after the final trial court order of July 24, 2008, and the State argued Morton had not timely perfected his appeal of the 2006 order denying testing on the bandana. The State claimed Morton had to appeal within thirty days of the 2006 order, which denied testing on the bandana, because the trial court's order regarding the bandana was part of Morton's appellate complaint.[5] *Id.* at *8.

The Austin court rejected the State's assertion:

---

[4]According to a footnote in *Morton*, a ruling on the second two requested items was not made until the conditional grant of mandamus by the Austin Court of Appeals. *Morton*, 2010 Tex. App. LEXIS 93, at **4–5 n.2.

[5]Morton also complained on appeal the trial court should have granted testing on the biological material from the other murder victim and on the fingerprints obtained at the Morton home.

5

> We do not read chapter 64 of the code of criminal procedure to require a separate notice of appeal for each of the three orders in this case. . . . Instead, we hold that in a chapter 64 proceeding the final order that denies forensic DNA testing . . . or that makes the required findings following the granting of DNA testing, . . . triggers the running of the notice-of-appeal deadline as to all such orders in the proceeding.

*Id.* at *10 (citations omitted).

The State in the instant case relies upon this language in *Morton* as authority that the trial court's order of February 25, 2010, granting a new trial, was the final order making Article 64.04's required findings. Thus, reasons the State, it did not need to appeal within twenty days of the April 29, 2009, order.

The procedural events in *Morton* differ from this case. Morton requested DNA testing of four separate groups of material. The trial court initially entered an order on two items; not until almost two years later did the court finally rule on the remaining two items. After the trial court entered orders on all requested items for testing—granting some and denying others—Morton appealed the order denying testing. The specific portion of the appeal in question was the *denial* of testing of a bandana at a time when some issues still remained as to testing of other material, whereas here the appeal is from the *granting* of DNA testing when no other issues were pending.

An order granting DNA testing is a significant order that if left unchallenged leads to gathering of additional evidence. As a result of the order granting Holloway's motion for testing and the failure to lodge an appeal, the knife has been scientifically examined. If the appeal had been filed in a timely manner, this Court conceivably could have reversed the order and precluded

6

the testing; that option is no longer available. The evidence gathered from the DNA testing of the knife now exists. If Holloway can use this evidence either in this proceeding or in an application for writ of habeas corpus, we know of no exclusionary rule prohibiting it.

To require the State to wait until after the trial court reviews the evidence and determines whether it is exculpatory denies the State a valuable right—to attempt to reverse the order granting the test. If the order granting testing is erroneous, a successful appeal would also save the expense of the scientific analysis. In *Morton*, all of the appeals involved orders denying testing rather than granting them, and the statement regarding the time for filing an appeal for when DNA testing is granted is dicta. We hold that the order granting the DNA testing is the appealable order and the State must appeal within the appropriate time from that order. *See State v. Young*, 242 S.W.3d 926 (Tex. App.—Dallas 2008, no pet.) (State's appeal of order granting forensic DNA testing).

Unlike *Morton*, here there was no other motion or request for DNA examination of any other item; the DNA motion was for testing of the knife only. If the trial court erred in granting the request for testing the knife, the State had a right to appeal that order and request that DNA testing and analysis be stayed during the appeal. Had that course of action been followed, this Court could have rendered a decision that would have had a legal and practical effect; today, that is not possible. *Houston Indep. Sch. Dist. v. Houston Teachers Ass'n*, 617 S.W.2d 765, 766 (Tex. Civ. App.—Houston [14th Dist.] 1981, no pet.) (appellate courts do not decide cases where a party

7

seeks judgment upon some matter which, when rendered, cannot have any practical legal effect upon the case).

We hold that the notice of appeal must have been filed within twenty days of the April 29, 2009, order granting DNA testing, as it was the order being challenged; we lack jurisdiction to consider this point of error. *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996) (timely notice of appeal necessary to invoke a court of appeals' jurisdiction). We dismiss that portion of the State's appeal.

## IV.    The Order Granting a New Trial

The State filed a timely appeal to the order granting a new trial and argues the trial court erred because one of the conclusions of the trial court was erroneous as a matter of law. We agree the trial court erred in granting the new trial, but not for the reason argued by the State.

The trial court's jurisdiction expires when a case becomes final or is taken to a higher court. *In re State ex rel. Sistrunk*, 142 S.W.3d 497, 503 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Yarbrough v. State*, 703 S.W.2d 645, 649 (Tex. Crim. App. 1985)) (where conviction affirmed by Texas Court of Criminal Appeals, general jurisdiction is not restored to trial court; trial court is vested with special or limited jurisdiction to see that Texas Court of Criminal Appeals' judgment is executed and mandate carried out). A trial court then has only limited jurisdiction to perform functions specified by statute, such as finding facts on an application for writ of habeas corpus. *State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002). Without

8

jurisdiction, the trial court has no power to act. *Id.* at 595. Generally, a trial court has plenary jurisdiction over a case for the first thirty days after sentencing because it has the authority to receive a motion for new trial (or motion in arrest of judgment) within that time period and to resolve the merits of that motion within seventy-five days after sentencing. *See* TEX. R. APP. P. 21; *McClinton v. State*, 121 S.W.3d 768, 778 n.1 (Tex. Crim. App. 2003) (Cochran, J., concurring). A court has inherent power to correct, modify, vacate, or amend its own rulings so long as the court does not exceed a statutory timetable. *Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998).

Holloway was convicted and sentenced on October 31, 2002. This Court affirmed the conviction, a petition for review was denied, and our mandate issued May 27, 2004. Six years later, on February 24, 2010, the trial court signed an order purporting to grant a new trial. The trial court lost its plenary power to grant a new trial seventy-five days after convicting and sentencing Holloway, on October 31, 2002.[6] TEX. R. APP. P. 21.8(a). Both parties asserted in oral argument that either Chapter 64 or the trial court's discretion authorized a new trial order in this case. From the citations and discussion above, we think it is clear the trial court has no jurisdiction, and thus certainly no discretion, to order a new trial at this late date. As for Chapter 64, there is nothing in the statute authorizing the granting of a new trial. In *Ex parte Tuley*, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals stated, "Chapter 64

---

[6]"[O]nce a motion for new trial is overruled by operation of law, the trial court loses jurisdiction to rule upon it." *State v. Moore*, 225 S.W.3d 556, 566–67 (Tex. Crim. App. 2007) (citations omitted).

provides for forensic DNA testing but does not provide a vehicle for obtaining relief if testing reveals affirmative evidence of innocence. The vehicle for relief after obtaining test results that constitute affirmative evidence of innocence is article 11.07 for noncapital felonies and article 11.071 for capital murder."[7]

The trial court's order granting a new trial and setting bond for Holloway's release is vacated.

## V. Article 64.04 Finding

As part of the State's appeal of the trial court's entry of an order granting a new trial, the State challenges the trial court's conclusion of law wherein the trial court found "[t]here is a reasonable probability that Danny Holloway would not have been convicted in this case if the exculpatory DNA results been [sic] available during the trial of this case."

If the trial court orders DNA testing, it must hold a hearing and "make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." TEX. CODE CRIM. PROC. ANN. art. 64.04. Here, the trial court held a hearing on February 25, 2010, at which Holloway formally offered the DNA test results from the stains found on the knife admitted at trial. The State did not object; the court then

---

[7]In *Ex parte Baker*, 185 S.W.3d 894, 896 n.19 (Tex. Crim. App. 2006), the Texas Court of Criminal Appeals cited *Tuley* as "dicta." *Tuley* was a habeas proceeding where the victim had recanted and the trial court recommended relief be granted. The Texas Court of Criminal Appeals' opinion found that even though Tuley pled guilty, he was not precluded from later asserting actual innocence. Further, "a motion for DNA testing cannot, by itself, result in relief from a conviction or sentence. It is simply a vehicle for obtaining a certain type of evidence, which might then be used in a state or federal habeas proceeding." *Thacker v. State*, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005).

heard arguments of the parties. While the trial judge made statements indicating his impressions of what the trial testimony had been, he did not make any formal findings at the hearing. Instead, he ordered a new trial be granted and set a bond. About six weeks later, on April 12, 2010, Holloway submitted proposed findings of fact and conclusions of law, which the trial court approved April 12, 2010.

The Texas Court of Criminal Appeals has not set out the standard of review of a trial court's finding under Article 64.04, but has found a de novo review is proper under Article 64.03(a)(2)(A), which requires the defendant prove by a preponderance of the evidence that he or she would not have been convicted if exculpatory results had been obtained through DNA testing. *Smith v. State*, 165 S.W.3d 361, 363–64 (Tex. Crim. App. 2005). The Texas Court of Criminal Appeals noted that there were no credibility and demeanor issues in that case since there were no witnesses at the hearing and the trial record and an affidavit were the only evidence. *Id.* at 363. Similarly, here the record consists of the trial record and written records together with counsel's arguments. We will use the de novo review as the standard. *See Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) ("Although there may be subsidiary fact issues that are reviewed deferentially, the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application of law to fact question that does not turn on credibility and demeanor and is therefore reviewed *de novo*."); *Frank v. State*, 190 S.W.3d 136

11

(Tex. App.—Houston [1st Dist.] 2005, no pet.) (using de novo standard of review in Article 64.04 cases).[8]

As previously stated, the DNA test results verified that the victim's blood was not found on the knife. From this scientific determination, the trial court concluded that there was a reasonable probability that Holloway would not have been convicted if the DNA results had been available at trial. We do not agree that it logically follows that a negative finding of the victim's blood on the knife provides a reasonable probability that Holloway would not have been convicted. If the victim's blood had been found on the knife, it would be extremely persuasive that this knife was used as the murder weapon, but that evidence alone would not lead to the conclusion that Holloway caused the death. Conversely, the fact that the victim's blood was not on the knife may reveal: (1) this knife was not the murder weapon; (2) no residue of the victim's blood was deposited on the knife; or (3) the knife was successfully cleaned—it does not provide evidence that Holloway did not use a knife and cause the victim's death. There is a substantial amount of other evidence directly probative of whether Holloway caused the death.

Holloway argues that the State proved this knife was "the murder weapon" and as such this evidence exculpates him. But in the opinion on Holloway's direct appeal it is stated "there is a dispute over whether this was the knife Holloway originally had, Holloway was seen . . . with a

---

[8]Articles 64.03 and 64.04 originally required evidence a movant would not be prosecuted or convicted if favorable results were obtained. The requirements were amended to only require findings the movant would not be convicted. *See* TEX. CODE CRIM. PROC. ANN. arts. 64.03, 64.04; Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, §§ 3, 4, 2003 Tex. Gen. Laws 16 (amended 2007) (current version at TEX. CODE CRIM. PROC. ANN. arts. 64.03, 64.04 (Vernon Supp. 2010)).

survival knife before Lee was stabbed." Further Holloway's girlfriend testified he only had a small pocketknife, not the knife introduced into evidence. *Holloway v. State,* No. 06-02-00216-CR, 2003 WL 22491053, at *1 (Tex. App.—Texarkana Nov. 5, 2003, pet. ref'd) (mem. op., not designated for publication).

The fact that the victim's blood or DNA was not found on the knife in Holloway's vehicle does not create a reasonable probability that Holloway was innocent. *See Kutzner v. State*, 75 S.W.3d 427, 438–39 (Tex. Crim. App. 2002). In *Thompson v. State*, 95 S.W.3d 469 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd),[9] the movant wanted DNA testing on a box cutter found at the scene of the crime. In affirming the trial court's order denying DNA testing, the appellate court said, "[E]ven if DNA testing proved that the box cutter did not contain complainant's blood or any blood at all, it would not prove [Thompson]'s innocence." *Id.* at 472. Noting that even if testing produced "negative test results" that could "supply an exculpatory inference, such an inference . . . would not conclusively outweigh the other evidence of [Thompson's] guilt." *Id.* (citing *Rivera*, 89 S.W.3d at 60). Thompson was identified by the victim as one of the three people who assaulted the victim with a box cutter. A box cutter, with what appeared to be blood on it, was found where Thompson had been standing. It appears from the opinion that the victim identified Thompson as the one who had stabbed him. The victim

---

[9]*Thompson*, as well as most of the cases discussed in this section, addressed denials of testing under Article 64.03. We cite and discuss these cases because they all address whether the particular movants satisfied Article 64.03's requirement of proving by a preponderance of evidence the movant would not have been convicted if exculpatory results had been obtained by DNA testing. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2) (Vernon Supp. 2010).

identified the box cutter found near Thompson as the instrument with which the victim was stabbed.

In *Rivera*, the Texas Court of Criminal Appeals held that even if Rivera's requested DNA testing were performed, the results would not prove his innocence. Rivera wanted DNA testing done on his fingernail clippings: "While the presence of the [victim]'s DNA under appellant's fingernails could indicate guilt, the absence of such DNA would not indicate innocence." *Rivera*, 89 S.W.3d at 60.

In determining whether there was a reasonable probability that Holloway would not have been convicted if this evidence had been available, we must also consider all of the other evidence the jury heard. Two witnesses, Taquilla Gray and Derrick Dillard, testified they saw Holloway stab the victim. Gray also saw Holloway stab Mike Lipscomb, another person at the scene. Gerald Edwards also saw Holloway stab Lipscomb.

The other witness who testified to seeing Holloway stab the victim also saw Holloway stab another person at the scene, Courtney Gray (no relation to Taquilla Gray). Gray also testified that Holloway stabbed him. Dillard testified he saw Holloway stab Courtney Gray. Multiple witnesses testified no one but Holloway had a knife at the scene. At least five witnesses saw Holloway with a knife. Holloway presented one witness who said he had seen a different person with either the knife in evidence or one similar, and that person was involved in two fights outside the club the night of the offense. Several witnesses testified Holloway was swinging the knife

14

wildly at the crowd, and there was testimony Holloway, a Caucasian, also hurled racial epithets at the predominantly African-American crowd and drove recklessly into the parking area. In his statement to police, Holloway explained the knife, wrapped in a towel, was put in his car as he and his girlfriend drove away from the scene. Holloway said the knife must have been put in his car by someone in the crowd who reached in a window while trying to stab Holloway. He denied having a knife, but said he may have picked one up in fighting off his attackers and possibly taking a knife from one of them. A movant under Chapter 64 must demonstrate a reasonable probability that he or she would not have been convicted if the DNA results were presented to the jury; this showing is not made if the test results would "merely muddy the waters." *See Rivera*, 89 S.W.3d at 59 (citing *Kutzner*, 75 S.W.3d at 439).

We dismiss the State's appeal of the order granting DNA testing. We vacate the order granting a new trial and setting bond. After reviewing the evidence de novo, we find it is insufficient to support the trial court's finding that it is reasonably probable Holloway would not have been convicted if the DNA evidence had been available during trial. We remand the case to the trial court for entry of a capias for the arrest and incarceration of Holloway in order that he serve the remainder of the sentence.


                                        Jack Carter
                                        Justice

Date Submitted:          November 3, 2010
Date Decided:            December 10, 2010

Publish