

## NUMBER 13-16-00396-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**JESUS RODRIGUEZ,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                 **Appellee.**

### On appeal from the 450th District Court
### of Travis County, Texas.

## MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Benavides and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant Jesus Rodriguez appeals his conviction for murder, a first-degree felony.

*See* TEX. PENAL CODE ANN. § 19.02 (West, Westlaw through 2017 1st C.S.).   A jury

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Third Court of Appeals in Austin, Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

returned a guilty verdict, and the trial court assessed punishment at life imprisonment in the Texas Department of Criminal Justice–Institutional Division. Appellant raises five evidentiary issues, which primarily address the exclusion of evidence supporting appellant's belief or delusion that the decedent Michael Norwood was associated with a drug cartel and was attempting to carry out a "hit." By two additional issues, appellant challenges the sufficiency of the evidence supporting his conviction and argues that the trial court abused its discretion in denying his motion for new trial. We affirm.

## I. BACKGROUND

Appellant was charged by indictment with intentionally or knowingly causing the death of Norwood by shooting him with a firearm. *See id.* The record reflects that appellant shot and killed Norwood at Brackenridge Hospital (the hospital) in Austin, Texas, shortly before midnight on December 31, 2013. Appellant arrived at the hospital earlier that evening complaining of back pain. He was prescribed medication and was discharged around 7:20 p.m. However, appellant remained around the emergency room waiting area for approximately four hours. A triage nurse asked hospital security to escort appellant from the building around 11:00 p.m. Appellant exited the waiting room area but remained just outside of the hospital.

Sonya Manning testified that she was waiting for a ride at the hospital. She witnessed security personnel direct appellant to leave the premises and noticed that he was carrying a backpack. While Manning was waiting inside the hospital, Norwood approached her and asked to use her lighter. She later went outside to smoke a cigarette and began conversing with Norwood. Manning noticed two police cars nearby.

2

After one of the officers drove away, appellant approached Norwood and Manning, asking "What did you all say about me?" Norwood answered, "Ain't nobody said nothing about you dude." Appellant walked away, and Manning continued talking with Norwood.

According to Manning, after the second officer drove away, appellant approached them again and asked, "What did you all say about me?" Manning and Norwood again denied saying anything about appellant. Manning stated that appellant then walked in front of them, pulled out a gun, and said, "I was just waiting for the laws to leave." Manning described what happened next:

> And he shot [Norwood.] It looked like—from my point of view, it looked like a straight face shot. [Norwood] blocked it and—he blocked it. And then [appellant] went up and grabbed [Norwood.] And I ran sideways like, you know—I'm thinking I'm running sideways, I ran into the emergency room. And that's when two more shots went off and it was [Norwood.] And he shot [Norwood] again.

Manning explained that when appellant approached them, Norwood was on the phone "with his kinfolk."

Several officers responded to the scene. According to their testimony, they apprehended appellant nearby on hospital grounds. Officers discovered a firearm under Norwood's body. They also recovered appellant's backpack and found two loaded handgun magazines.

According to the autopsy, Norwood died from two gunshot wounds—to his left upper chest and to the backside of his left shoulder. The muzzle imprint on the wounds indicated that the gun was in contact with Norwood's body when it was fired.

Appellant testified in his defense. He claimed that he believed Norwood was an associate of a drug cartel and that he feared he was carrying out a "hit." Appellant

3

believed he was being targeted by a drug cartel, and he claimed that cartel members had previously shot and stabbed him. Appellant stated that he reached out to police on multiple occasions concerning these incidents. Appellant went to the hospital that evening "for protection and for the prescription." He remained on the premises because he felt the hospital was a safe location.

According to appellant, just prior to the shooting, he heard Norwood state "That fool is in front of me right now. If you're going to cap him, cap him." Appellant then began walking toward the parking garage when he heard a gunshot. He stated, "I start freaking out. I start looking around. And then [Norwood is] right there. And it happened all fast. We started fighting." Appellant claimed that his gun was thrown from his backpack during the struggle. He stated, "We both went after the gun, and we started struggling over the gun." Appellant admitted that he fired the gun that killed Norwood and that the gun found under Norwood's body was his.

The jury charge included instructions for murder, manslaughter, and self-defense. The jury found appellant guilty of murder. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his sixth issue, which we address first, appellant argues the evidence was legally insufficient "to support the verdict." Specifically, appellant argues that "the evidence demonstrates it is reasonable to believe that self-defense was necessary."

### A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the

4

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.); *see also Kirk v. State*, 421 S.W.3d 772, 776–77 (Tex. App.—Fort Worth 2014, pet. ref'd) (applying the *Jackson* standard to the jury's rejection of a self-defense theory). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc).

In reviewing the legal sufficiency of the evidence to support the fact-finder's rejection of the defensive issue of self-defense, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see Gaona v. State*, 498 S.W.3d 706, 709 (Tex. App.—Dallas 2016, pet. ref'd); *Kirk*, 421 S.W.3d at 777.

**B.    Applicable Law**

A person commits murder if he intentionally or knowingly causes the death of an

5

individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)–(2). However, under certain circumstances, self-defense justifies the use of deadly force. *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). The Texas Penal Code provides in part that a person is justified in using deadly force against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31, 9.32(a) (West, Westlaw through 2017 1st C.S.).

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *See Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. "The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Zuliani*, 97 S.W.3d at 594. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Id.* at 914.

**C.    Analysis**

The jury heard conflicting testimony concerning the moments preceding Norwood's death. Appellant claimed he feared Norwood was attacking him because he was associated with a drug cartel. Appellant described hearing Norwood say, "That fool

6

is in front of me right now. If you're going to cap him, cap him." Appellant then heard a gunshot and described a physical struggle with Norwood resulting in his firearm falling from his backpack. Appellant claimed that he and Norwood both attempted to grab the weapon but that he reached the gun first. He stated he fired the weapon at Norwood because he feared for his life.

Manning's testimony directly contradicts appellant's version of events. According to Manning, appellant approached Norwood, pulled out his weapon, and shot Norwood without provocation. There was no evidence that Norwood was armed, and the only weapon recovered from the scene belonged to appellant.

Manning's testimony that appellant approached Norwood and shot him without provocation is legally sufficient evidence to support the jury's implied rejection of appellant's self-defense claim. As the exclusive judge of the credibility of the witnesses, it was within the jury's province to disbelieve appellant's version of the deadly encounter. *See Brooks*, 323 S.W.3d at 899. When viewing the evidence in the light most favorable to the verdict, the jury could have rationally rejected appellant's defense claims and found each element of the charged offense was proven beyond a reasonable doubt. *See Johnson*, 364 S.W.3d at 293–94; *Saxton*, 804 S.W.2d at 913–14. We overrule appellant's sixth issue.

### III.  EVIDENTIARY ISSUES

### A.  Standard of Review

We review a trial court's ruling on evidentiary matters under an abuse of discretion standard. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). A trial court

7

abuses its discretion if its action is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). We consider the trial court's ruling in light of what was before it at the time the ruling was made and uphold the ruling if it lies within the zone of reasonable disagreement. *Billodeau*, 277 S.W.3d at 39. We will uphold the trial court's ruling if it was correct under any theory of law applicable to the case. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).

## B.    Mental Health Evidence

By his first issue, appellant argues that the trial court abused its discretion when it excluded the testimony of Marisa Mauro, Psy.D., a court-appointed psychologist. Appellant argues that Dr. Mauro should have been permitted to testify that appellant suffered from a delusional disorder because such evidence "pertained to [appellant's] reasonable belief that self-defense was necessary."

### 1.    Pertinent Testimony

Dr. Mauro testified outside the presence of the jury regarding her examination of appellant. Dr. Mauro examined appellant to evaluate his competency to stand trial and whether he was legally sane. Dr. Mauro concluded that appellant was both competent and sane. She detailed that appellant believed certain individuals or groups were "out to get him." Dr. Mauro stated that appellant reported hearing people talking and walking around in his attic. She believed that appellant's reports were consistent with auditory hallucinations and a delusional disorder constituting a mental disease or defect. She described the mental disease varyingly as a persecutory delusion or a paranoid delusion. Dr. Mauro opined that at the time of the murder, appellant believed people were stalking

8

him and had "basically put a hit out on him." According to Dr. Mauro, appellant believed that Norwood might have been a hitman. However, Dr. Mauro could not say whether or not appellant was able to "form intent" for the offense of murder. The trial court sustained the State's objections that, among other things, Dr. Mauro's testimony did not negate the *mens rea* for the offense of murder.

### 2. Applicable Law

Appellant did not raise insanity as an affirmative defense. Other than insanity there is no affirmative defense of "diminished capacity" in Texas. *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005). Rather, diminished capacity is recognized as a "failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense." *Jackson*, 160 S.W.3d at 573. As with other elements of the offense, the defendant may present relevant evidence negating the requisite *mens rea*. *Ruffin*, 270 S.W.3d at 594; *Jackson*, 160 S.W.3d at 574. This evidence may include evidence of a defendant's history of mental illness or evidence of a defendant's physical or mental diseases or defects. *Ruffin*, 270 S.W.3d at 593–94; *Jackson*, 160 S.W.3d at 574. But the evidence still must meet generally applicable requirements for admission of evidence, and it may be excluded if it does not truly negate the required *mens rea*. *Mays v. State*, 318 S.W.3d 368, 381–82 (Tex. Crim. App. 2010); *Ruffin*, 270 S.W.3d at 595–96.

A person commits murder if he intentionally or knowingly causes the death of an individual or when he, with the intent to cause serious bodily injury, commits an act clearly

9

dangerous to human life and thereby causes death. TEX. PENAL CODE ANN. § 19.02(b)(1)–(2). A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West, Westlaw through 2017 1st C.S.). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

### 3. Analysis

In the absence of an insanity defense, Dr. Mauro's testimony concerning appellant's delusional disorder was admissible only if such evidence negated the necessary *mens rea* for murder. *See Ruffin*, 270 S.W.3d at 596. *Ruffin* illustrates when evidence of mental disease or defect is admissible to negate the *mens rea* for an offense. The defendant in that case shot at approaching police officers because, due to his delusional state, he believed the officers were Muslims who were "waiting to kill [him] with a knife." *Id.* at 590. The trial court excluded testimony of appellant's psychologist regarding the existence and severity of his mental disease and delusions, ruling that such testimony is admissible only if a defendant pleads insanity. *Id.* The court of criminal appeals reversed, concluding that the defendant's mistaken perception, caused by a mental defect, was relevant to *mens rea* because it proved that he did not intend to shoot at police officers, an element of aggravated assault of a public servant. *Id.* at 594; *see* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West, Westlaw through 2017 1st C.S.) (enhancing punishment for aggravated assault if assailant intentionally attacked public servant in discharge of duties). The court noted that the psychologist's testimony, if believed, would have lessened the offenses from first-degree aggravated assaults of

10

police officers to second-degree aggravated assaults (an intentional shooting at a "trespasser" or at "Muslims"). *Ruffin*, 270 S.W.3d at 594.

In *Jackson*, the court of criminal appeals concluded that evidence of the defendant's mental illness did not negate *mens rea* for the offense of murder:

> Rather, the evidence presented an excuse for the crime, *i.e.*, that Appellant killed his brother because he was so paranoid that he thought his brother was out to get him. In fact, this evidence makes it even more apparent that Appellant intended to cause serious bodily injury or death to his brother. The evidence of appellant's paranoia simply provides a motive for the intentional act. The evidence presented was the type of excuse-based evidence that would be raised as an affirmative defense. As even Appellant acknowledges, Texas law does not recognize a lesser form of the insanity affirmative defense.

160 S.W.3d 568, 572 (Tex. Crim. App. 2005).

Unlike *Ruffin*, the charged offense is murder, not aggravated assault of a public servant, and the proffered evidence does not negate the *mens rea*. The State was required to prove that appellant intended to shoot at a person, not a specific individual such as a public servant. The excluded evidence establishes that appellant intended to kill Norwood and his motive for doing so—a paranoid delusion that Norwood was a hitman for a drug cartel. Nothing in Dr. Mauro's testimony suggests that appellant did not have the ability to form or did not form the culpable *mens rea* for committing murder. Therefore, her testimony would only be relevant to support a "lesser form of the insanity affirmative defense" which has been rejected by Texas courts. *See Mays*, 318 S.W.3d at 381 (holding that the trial court "was not required to admit any expert testimony concerning appellant's mental illness during the guilt stage because it did not directly rebut his culpable *mens rea*" and distinguishing *Ruffin* in part on the basis that "[a]ppellant

11

offered no evidence to suggest that he did not intend to shoot a person"); *Jackson*, 160

S.W.3d at 572.

Appellant claims alternatively that the evidence is admissible to support his claim

of self-defense. On that point, we find *Mays* instructive:

> Appellant fails to acknowledge that each of these justification defenses requires that the defendant reasonably believe that his conduct is immediately necessary to avoid a greater harm. As with the statutory mistake-of-fact defense, a "reasonable belief" is one that would be held by an ordinary and prudent person, not by a paranoid psychotic. Appellant's repeated claim that "his paranoid ideations and active psychosis" raise a "reasonable belief" that his actions were justified is supported neither by law nor common sense.
>
> Texas law does not recognize the "ordinary and prudent" paranoid psychotic for purposes of Penal Code justification defenses. The only affirmative defense available under Texas law for those who commit crimes while suffering from an abnormal mental disease or defect is insanity under Section 8.01. Appellant did not assert an insanity defense at trial, and he cannot now claim entitlement to some other statutory defense based upon his mental disease or defect.

318 S.W.3d at 385–86 (internal citations omitted). As indicated in *Mays*, self-defense

supported by a paranoid delusion is not a recognized defense in Texas.

Finally, appellant argues that Dr. Mauro's testimony is admissible under article

38.36(a) of the code of criminal procedure. That provision states that:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (West, Westlaw through 2017 1st C.S.). The

court in *Ruffin* explained article 38.36's significance as follows:

> We quoted article 38.36 in *Jackson* for the unremarkable proposition that

12

> both the State and defendant may offer testimony as to "all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." This is one of the few Texas statutes that explicitly states the obvious: evidence offered by either the defense or prosecution is relevant (and presumptively admissible) to prove or disprove the pertinent *mens rea* at the time of the offense.

*Ruffin*, 270 S.W.3d at 596 (internal citations and footnote omitted). To be admissible under article 38.36, evidence of mental illness must still meet general evidentiary requirements and may be excluded if it does not truly negate the *mens rea*. *Id.* In this case, as previously explained, evidence of appellant's delusional disorder does not negate the *mens rea* for murder. Therefore, the trial court did not abuse its discretion in excluding Dr. Mauro's testimony. *See Billodeau*, 277 S.W.3d at 39. We overrule appellant's first issue.

## C. Private Investigator's Testimony

By his second issue, appellant argues that the trial court abused its discretion when it excluded the testimony of Paul Brick, a private investigator retained by appellant.

### 1. Pertinent Facts

Brick testified that he is a retired police officer with twenty-eight years' experience in law enforcement. Brick stated that he spoke to various law enforcement agents to confirm whether appellant cooperated in drug investigations. When appellant inquired as to the substance of those conversations, the State urged a hearsay objection. Appellant responded that the hearsay was admissible because it formed the basis for Brick's expert opinion. The trial court excused the jury and conducted a hearing concerning the admissibility of Brick's testimony.

Outside the presence of the jury, Brick testified that his area of expertise was

13

"organized crime, drug-smuggling networks." Brick stated that he intended to offer the following opinion to the jury: "Whether or not I was able to verify that [appellant] did in fact make contact with members of law enforcement and turn over information to them[.]" Brick stated that he intended to offer an opinion as to whether appellant was telling the truth in that regard. He stated that the basis for his opinion was a summary of conversations he had with law enforcement personnel.

Appellant's counsel argued that Brick was being offered "just to verify [appellant] had these meetings [with law enforcement] and did turn over information." The State responded that Brick was not qualified to render an expert opinion and that his opinion was not reliable. Regarding reliability, the State argued that Brick was not relying on or utilizing any principles in the field of his expertise but was simply testifying as to what other people told him. The State further argued that Brick was not drawing any conclusions "other than [appellant] is a truth teller." Because he was not offering an expert opinion, the State maintained that Brick's testimony was inadmissible hearsay. The trial court sustained the State's objection to Brick's testimony.

### 2. Applicable Law

The admissibility of expert testimony is governed by Texas Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. In addition, Rule 705 provides that, if the court determines that "the underlying facts or data do not

14

provide a sufficient basis" for the expert's opinion under Rule 702, the opinion is inadmissible. *Id.* R. 705(c).

In determining the admissibility of expert testimony, a trial judge must make three separate inquiries, whether: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). These conditions are commonly referred to as qualification, reliability, and relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). Here, the opinion testimony of the officer concerned a soft science. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (distinguishing "hard" from "soft" sciences). The reliability of soft science evidence may be established by showing that the field of expertise involved is legitimate, the subject matter of the expert's testimony is within the scope of that field, and the expert's testimony properly relies on or utilizes the principals involved in that field. *Id.* To show that an expert properly relied on the principles of his field, the expert's proposed testimony must be derived from the expert's "knowledge, skill, experience, training, or education . . . ." TEX. R. EVID. 702.

### 3. Analysis

Brick testified that his area of expertise was "organized crime, drug-smuggling networks." However, Brick's verification of appellant's cooperation with law enforcement did not constitute an opinion derived from his expertise. *See id.*; *Weatherred*, 15 S.W.3d at 542. Rather, Brick was simply sharing a summary of his contacts with law

enforcement officials. Further, Brick acknowledged that his conclusions constituted an opinion regarding whether appellant was telling the truth when he claimed to have made such contacts. "It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence." *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)); *see Reynolds v. State*, 227 S.W.3d 355, 365–66 (Tex. App.—Texarkana 2007, no pet.). This rule applies to expert and lay witness testimony alike. *Fisher v. State*, 121 S.W.3d 38, 41 (Tex. App.—San Antonio 2003, pet. ref'd); *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.). We conclude that the trial court did not abuse its discretion in concluding that Brick's testimony was not reliable expert evidence.

Appellant argues in the alternative that Brick's testimony was admissible as a lay opinion. Admission of lay-opinion testimony is controlled by Texas Rule of Evidence 701. When conducting a rule 701 evaluation, the trial court must decide: (1) whether the opinion is rationally based on perceptions of the witness; and (2) whether it is helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue. TEX. R. EVID. 701; *see Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). Rule 701 requires the proponent of lay-opinion testimony to establish, as a predicate, that the witness has personal knowledge of the events upon which his opinion is based. *See Fairow*, 943 S.W.2d at 898. Personal knowledge will generally come directly from the witness's senses. *Id.*; *see Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim. App. 1984). Brick's opinion testimony was not based on personal knowledge. Rather, his opinion

16

that appellant cooperated with law enforcement officers was based on the hearsay statements of those very officers. *See* TEX. R. EVID. 801(d), 802. A lay-witness opinion based on hearsay is inadmissible. *McMillan v. State*, 754 S.W.2d 422, 425 (Tex. App.—Eastland 1988, pet. ref'd); *see Fairow*, 943 S.W.2d at 898.

We conclude that Brick's testimony was not proper expert or lay opinion testimony. Therefore, the trial court did not abuse its discretion in excluding the evidence. *See Billodeau*, 277 S.W.3d at 39.

## D. Norwood's Drug Use

By his third and fourth issues, appellant argues the trial court erred in excluding references to Norwood's drug use in the moments preceding his death. Appellant sought to question Manning concerning Norwood's statement that he had used drugs the day before and that he was attempting to buy more. Appellant also sought to introduce a toxicology report showing that Norwood had cocaine in his system at the time of his death. The State objected that the evidence was not relevant, constituted improper character evidence, and was overly prejudicial. The trial court sustained the State's relevance objection. Appellant maintains on appeal that the evidence was offered for a non-character purpose and was relevant to his claim of self-defense.[2]

### 1. Applicable Law

Relevant evidence is evidence which has any tendency to make the existence of

---

[2] Appellant also argues in conclusory fashion that the testimony was admissible to impeach Manning's credibility. However, appellant does not support this contention with argument or authority. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Therefore, the issue is inadequately briefed and presents nothing for our review. *See McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001).

any fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence is generally admissible, unless it is prohibited by law or an evidentiary rule. *Id.* R. 402. For instance, when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, the evidence is inadmissible under Rule 403. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (citing TEX. R. EVID. 403). In addition, evidence of a person's other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that character. TEX. R. EVID. 404(a)(1); *see Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998) (explaining that evidence of a person's character may not be used to prove that the person "behaved in a particular way at a given time"). On the other hand, a defendant may be allowed to offer evidence of a victim's character for violence to show that a victim was the first aggressor in a violent encounter, regardless of whether the defendant was aware of that evidence. *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009). Such evidence must be in the form of opinion or reputation, and not specific instances of violent behavior. *Id.*; TEX. R. EVID. 404(a)(3), 405(a).

Further, a defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of [the] defendant's claim of apprehension of danger" from the victim. *Ex parte Miller*, 330 S.W.3d at 618 (citing *Torres v State*, 71 S.W.3d 758, 760 & n.4 (Tex. Crim. App. 2002)). This purpose invokes Rule 404(b) because the evidence is offered to show the defendant's own self-defensive state of mind and the reasonableness of that state of

18

mind. *Id.* at 618-19; *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). However, the defendant must show that he was aware of the victim's specific acts for the evidence to be admissible for this purpose. *Torres*, 71 S.W.3d at 760 n.4.

Finally, a defendant may also introduce evidence under Rule 404(b) of a "victim's prior specific acts of violence when offered for a non-character purpose—such as his specific intent, motive for an attack on the defendant, or hostility—in the particular case." *Ex parte Miller*, 330 S.W.3d at 620; *see* TEX. R. EVID. 404(b)(2). "As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant." *Torres*, 71 S.W.3d at 762. "The proper predicate for the specific violent prior act by the deceased is some act of aggression that *tends* to raise the issue of self-defense, which the violent act may then help clarify." *Torres v. State*, 117 S.W.3d 891, 895 (Tex. Crim. App. 2003) (emphasis in the original).

### 2. Analysis

We first note that the evidence was not in the form of reputation or opinion testimony concerning Norwood's violent character. *See Ex parte Miller*, 330 S.W.3d at 619. Therefore, the evidence is not admissible to show that Norwood was the first aggressor in the encounter. *See id.* Next, appellant did not establish that he was aware that Norwood had recently used cocaine. Therefore, the evidence would not be admissible to show the reasonableness of appellant's apprehension of danger. *See Torres*, 71 S.W.3d at 760 n.4. Finally, appellant has not shown that Norwood's cocaine

use demonstrated any specific intent, motive to attack appellant, or hostility that Norwood may have had. For instance, there is nothing in the record connecting Norwood's drug use to the alleged violent acts or to any propensity of Norwood to act violently. *See Torres*, 117 S.W.3d at 895; *see also Moore v. State*, No. 10-06-00319-CR, 2007 WL 4260446, at *3 (Tex. App.—Waco Dec. 5, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that evidence of murder victim's drug use was not relevant apart from showing character conformity). We conclude that the trial court did not abuse its discretion in concluding that Norwood's drug use was not relevant apart from showing character conformity. *See Billodeau*, 277 S.W.3d at 39.

We also conclude that the evidence would have been properly excluded under Rule 403. *See Bowley*, 310 S.W.3d at 434 (explaining that an appellate court must uphold a trial court's evidentiary ruling on any theory of law applicable to the case). When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The probative value of evidence concerning intoxication "necessarily depends

upon the ability to infer intoxicating effects from the fact of consumption of the controlled substance." *Gonzalez v. State*, ___ S.W.3d. ___, __, No. PD-0181-17, 2018 WL 1736689, at *6 (Tex. Crim. App. Apr. 11, 2018). Here, the record is silent as to precisely when Norwood used cocaine, the drug's intoxicating effects, and how long those effects lasted. Assuming the evidence was of minimal relevance, the probative force of the evidence rested entirely upon the ability to draw an inference of intoxication at the time of the offense. Without additional evidence regarding the cocaine's intoxicating effects and its relation to Norwood's behavior, such evidence had little probative value. *See id.* at *7; *see also* TEX. R. EVID. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

Further, appellant had little need for the evidence. Appellant's theory at trial was that he feared for his life because he believed Norwood was carrying out a hit for a drug cartel. In support of that defense, appellant presented evidence that he was previously targeted by cartel members and that Norwood stated he was going to "cap" appellant moments before the shooting. Appellant also claimed that he and Norwood engaged in a struggle over appellant's firearm. Norwood's use of cocaine does nothing to further appellant's defensive theory.

On the other hand, Norwood's drug use had the potential to impress the jury in some irrational and indelible way. The evidence had the potential to lure the jury to reaching a conclusion based on a decedent's cocaine use, and the stigma attached to such behavior, without the aid of any evidence concerning the drug's effect.

21

We conclude that the Rule 403 balancing factors support the trial court's evidentiary ruling. *See Gonzalez*, 2018 WL 1736689, at \*7–8 (holding that evidence of defendant's use of the drug ecstasy was inadmissible under Rule 403 without additional evidence concerning the effects of the drug or its relation to defendant's behavior). Therefore, the trial court did not abuse its discretion in excluding evidence of Norwood's cocaine use. *See Billodeau*, 277 S.W.3d at 39. We overrule appellant's third and fourth issues.

### E. Impeachment Evidence

By his fifth issue, appellant argues the trial court abused its discretion when it excluded evidence that Manning's brother, Otis Pearce, visited appellant in jail. Appellant argues such evidence was relevant because it demonstrates potential witness bias and it impeaches Manning's testimony that she did not know appellant.

#### 1. Pertinent Facts

During the cross-examination of Manning, appellant elicited that Manning had a brother named Otis Pearce. Appellant later testified that he was long-time friends with Pearce. Appellant explained that he knew Manning was Pearce's sister but that he had never spoken to Manning before the night of the shooting. Appellant could not say whether Manning knew appellant.

During a hearing outside the presence of the jury, appellant's counsel argued for the introduction of evidence that Pearce visited appellant in jail following his arrest. Appellant intended to establish this through his own testimony and a video of the jail visit. The State argued that the evidence was not relevant in that it did not impeach Manning's

22

testimony. The State noted that appellant testified he had never spoken to Manning, which was consistent with Manning's claim that she did not know appellant. The trial court sustained the State's objection.

### 2. Applicable Law

A defendant may cross-examine a witness on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Texas Rule of Evidence 613(b) allows an opponent to impeach a witness by proof of bias or interest by first questioning the witness, and if the witness denies the bias or motive, "the opponent may introduce extrinsic evidence to prove the motive or bias." *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 613(b)). "[G]enerally speaking, the Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id.* The trial court, however, has broad discretion to impose reasonable limitations on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Carroll*, 916 S.W.2d at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

### 3. Analysis

Appellant was not prevented from presenting evidence of Manning's potential bias. Appellant testified that he was long-time friends with Pearce. Appellant also elicited from Manning that Pearce was her brother. Appellant however acknowledged that he had never spoken to Manning, and he was unable to say whether or not Manning knew him

23

through his association with Pearce.   The fact that Pearce visited appellant in jail following his arrest does not further demonstrate any bias or motive on the part of Manning.   If anything, the evidence is merely cumulative of appellant's earlier testimony. We are unable to conclude that the trial court's ruling was an abuse of its broad discretion to avoid injection of cumulative or collateral evidence.   *See Carroll*, 916 S.W.2d at 498.

## IV.   MOTION FOR NEW TRIAL

By his seventh and final issue, appellant argues that the trial court abused its discretion in denying his motion for new trial.   Appellant maintains that he was entitled to a new trial based on newly discovered evidence.[3]

A motion for new trial must be filed within thirty days after sentence is imposed or suspended in open court.   TEX. R. APP. P. 21.4(a); *see State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017); *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013).   The motion can be amended at any time during that thirty–day period, but the trial court is barred from considering a ground raised outside the thirty–day period if the State properly objects.   *Arizmendi*, 519 S.W.3d at 150; *Zalman*, 400 S.W.3d at 593; *see* TEX. R. APP. P. 21.4(b).   The trial court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court.   TEX. R. APP. P. 21.8(a).

---

[3] Article 40.001 of the Texas Code of Criminal Procedure provides, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."   TEX. CODE CRIM. PROC. ANN. art. 40.001 (West, Westlaw through 2017 1st C.S.).   To obtain relief under this provision, the defendant must satisfy the following four-prong test:   (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial; (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.   *State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017); *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014).

Generally, a trial court has plenary jurisdiction over a case for the first thirty days after sentencing because it has the authority to receive a motion for new trial (or motion in arrest of judgment) within that time period and to resolve the merits of that motion within seventy-five days of sentencing. *See id.* R. 21.8; *State v. Moore*, 225 S.W.3d 556, 569 (Tex. Crim. App. 2007); *McClinton v. State*, 121 S.W.3d 768, 778 n.1 (Tex. Crim. App. 2003) (Cochran, J., concurring); *State v. Holloway*, 329 S.W.3d 247, 252 (Tex. App.—Texarkana 2010), *aff'd*, 360 S.W.3d 480 (Tex. Crim. App. 2012).

Appellant timely filed his first motion for new trial on June 10, 2016, which was within thirty days of the May 24 sentencing. That motion was overruled by operation of law on August 8, 2016. However, appellant's amended motion for new trial, which asserted newly-discovered evidence as its basis, was not filed until September 20, 2016, approximately four months later. Because the amended motion was not filed within seventy-five days of sentencing, the trial court was deprived of any authority to rule on the motion. *See Moore*, 225 S.W.3d at 569.

We overrule appellant's seventh issue.

## V.  CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of May, 2018.

25